**MIRANT SUGAR CREEK, LLC, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 71T10–0803–TA–18.

Tax Court of Indiana.

June 16, 2010.

Timothy D. Hernley, Richard J. Deahl, Barnes & Thornburg LLP, South Bend, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Nancy M. Hauptman, John D. Snethen, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

### ORDER ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

Mirant Sugar Creek, LLC (Mirant) appeals the Indiana Department of State Revenue's (Department) denial of its claim for refund of Indiana's Utility Services Use Tax (the USUT) paid on its purchases of natural gas for the month of July, 2006 (the period at issue). The matter, before the Court on the parties' cross-motions for summary judgment, presents the following issues: (1) whether Mirant obtained a ruling from the Department providing that it was not subject to the USUT; and (2) if not, whether Mirant's purchases of natural gas were subject to the USUT.

### FACTS AND PROCEDURAL HISTORY

The following facts are not in dispute. During the period at issue, Mirant was in the business of generating electrical energy for sale. More specifically, Mirant owned and operated a natural gas-fired power plant, the Sugar Creek Generating Station ("Sugar Creek"), in Terre Haute, Indiana. To generate electricity, Sugar Creek purchased natural gas from an out-of-state vendor; the vendor shipped the natural gas to Sugar Creek through pipelines which the vendor neither owned nor controlled; Sugar Creek then consumed the natural gas during its production process. Sugar Creek sold the electricity it generated to an out-of-state customer who, in turn, resold the electricity to its own customers.

On or about July 19, 2006, the Department's Tax Policy Division issued a letter to Mirant which, in relevant part, provided:

> Our records show your business is a large consumer of natural gas or other utility services in Indiana and may be **required to remit** th[e USUT].
>
> **If your company purchases utility services from a vendor outside of Indiana that is not subject to the Utility Receipts Tax [ (URT) ], you are responsible for remitting the [USUT].**

(Pet'r Br. Opp'n Resp't Mot. Summ. J. (hereinafter, "Pet'r Br."), App. at 5.) At some point in August 2006, Mirant began to exchange e-mails with the Department because it believed that its purchases of natural gas were not subject to the USUT. That same month, Mirant also filed a USUT return for the period at issue and remitted approximately $65,000 to the Department for its purchases of natural gas.

On September 22, 2006, Mirant received an e-mail from the Department which it believed stated that its purchases of natural gas were not subject to the USUT. Consequently, Mirant did not file another USUT return, it remitted no further monies to the Department for the USUT, and

it filed a claim for refund as to the period at issue. The Department issued an order denying Mirant's refund claim on or about December 4, 2007.

On March 5, 2008, Mirant initiated this original tax appeal. On October 31, 2008, the Department moved for summary judgment. In its summary judgment motion, the Department asserted that Mirant's purchases of natural gas were subject to the USUT, given the General Assembly's 2008 amendment of Indiana Code § 6–2.3–3–5. (*See* Resp't Br. Mot. Summ. J. (hereinafter, "Resp't Br.") at 3–4, 10.) More specifically, the Department claimed that during the period at issue, Mirant's natural gas purchases were not wholesale sales for purposes of the statute. (*See* Resp't Br. at 7–8.) Mirant filed a cross-motion for summary judgment on December 3, 2008, contending that the Department's failure to refund the USUT it remitted was improper given the Department's September 22, 2006 e-mail. (*See* Pet'r Br. at 28–33.) In the alternative, Mirant asserted that contrary to the Department's claim, its natural gas purchases were indeed wholesale sales under Indiana Code § 6–2.3–3–5. (*See* Pet'r Br. at 9–22.) On April 2, 2009, the Court held a hearing on the parties' cross-motions. Additional facts will be supplied as necessary.

### STANDARD OF REVIEW

■ This Court reviews a final determination of the Department denying a taxpayer's claim for refund *de novo.* IND. CODE ANN. § 6–8.1–9–1(d) (West 2010). Accordingly, neither the evidence nor the issues presented at the administrative level are binding upon the Court. *See Horse-*

*shoe Hammond, LLC v. Indiana Dep't of State Revenue,* 865 N.E.2d 725, 727 (Ind. Tax Ct.2007), *review denied.* Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Horseshoe Hammond,* 865 N.E.2d at 727.

### ANALYSIS AND ORDER

### 1. Whether Mirant obtained a ruling from the Department providing that it was not subject to the USUT

■ Mirant argues that it is entitled to judgment as a matter of law because the Department's denial of its claim constitutes an impermissible retroactive change in the Department's interpretation of the USUT law.[1] More specifically, Mirant asserts that its e-mail exchanges with the Department culminated in the issuance of a binding Letter of Findings (LOF) which plainly stated that Mirant's purchases of natural gas were not subject to the USUT. (*See* Pet'r Br. at 28–30.) According to Mirant, the e-mails contain several "earmarks" of a LOF, as they: 1) evidence Mirant's written request for a Departmental ruling; 2) demonstrate that the relevant facts were provided to the Department; 3) indicate that the Department considered the issue for over a month and twice changed its position; and 4) demonstrate that an individual from the Department's Tax Policy Division, as opposed to some lower-level personnel, ultimately announced the Department's position as to the propriety of the tax. (*See* Pet'r Br. at 31–33.) The Department, on the other

---

1. During the period at issue, Indiana Code § 6–8.1–3–3 provided that "[n]o change in the [D]epartment's interpretation of a listed tax may take effect before the date the change is[ ] adopted in a rule ... if the change would

increase a taxpayer's liability for a listed tax." IND.CODE ANN. § 6–8.1–3–3(b) (West 2006). The USUT is a listed tax. IND.CODE ANN. § 6–8.1–1–1 (West 2006) (amended 2007).

hand, argues that at best, these e-mail exchanges were nothing more than non-binding letters of advice (LOA). (*See* Resp't Br. Mot. Strike at 14–15.) The Court agrees with the Department.

The e-mails at issue essentially consist of seven brief question/reply exchanges between Mirant's Senior Tax Analyst, Jill Houchin, and one of the Department's tax analysts, Jane Berggren. Specifically, on the afternoon of August 14, 2006, Ms. Houchin e-mailed Ms. Berggren inquiring as to whether a power plant's natural gas purchases were taxable under the USUT; the following morning, Ms. Berggren responded: "The same exemptions and non-taxable receipts apply to the USUT that apply to the U[R]T." (*See* Pet'r Br., App. at 7–8.) Approximately twenty minutes later, Ms. Houchin sent another e-mail seeking clarification as to Ms. Berggren's response; the very next minute, Ms. Berggren replied that the purchases would not be subject to the tax, as they could be considered a sale for resale. (*See* Pet'r Br., App. at 7.) Nearly one hour later, however, Ms. Berggren sent a follow-up e-mail to Ms. Houchin explaining that the purchases of natural gas were actually subject to the USUT because the natural gas was purchased for consumption not resale. (*See* Pet'r Br., App. at 6.) The final e-mail exchange between Ms. Houchin and Ms. Berggren occurred on September 22, 2006. During this exchange, Ms. Houchin once again inquired as to the imposition of the USUT because she had heard that the Department's position on the matter had changed. (*See* Pet'r Br., App. at 6.) Approximately twenty minutes later, Ms. Berggren responded:

Hello Jill,

We're all learning the "ins and outs" of this new tax together. Below is an excerpt from an email I received from our Policy Analyst after he spoke with you. I hope this information helps.

"The Department has determined that "a wholesale sale to another generator of utility services", found in IC 6–2.3–3–5(a), is to be interpreted, *in this case only,* as a nontaxable sale for URT/USUT purposes even though the purchasing utility uses the utility service *for its own consumption* rather than for resale.

The utilities involved in this interpretation are listed in IC 6–2.3–1–14.

Examples of exempt sales are an electric company selling electric to a water company for the water company's consumption and a gas company selling gas to an electric company for the electric company's consumption."

(Pet'r Br. App., at 6.)

Indiana Code § 6–8.1–3–3 requires the Department to interpret the statutes governing Indiana's listed taxes, but the methods by which it may do so are varied. *See* IND.CODE ANN. § 6–8.1–3–3(a) (West 2006); 45 Ind. Admin. Code 15–3–2(d)(1) (2006) (*see* http://www.in.gov/legislative/iac). For example, in some cases the Department may issue binding LOFs or LOAs interpreting the listed taxes; in other cases, it may issue non-binding LOAs. *See* 45 I.A.C. 15–3–2(d),(e). When the Department is to be bound by the ruling it issues, whether in the form of a LOF or a LOA, however, that ruling must eventually be published in the Indiana Register. *See* IND.CODE ANN. § 6–8.1–3–3.5 (West 2006); 45 I.A.C. 15–3–2(d)(3). Accordingly, the facts of each case and the presence of a ruling as to the issue in the Indiana Register will indicate whether the Department's interpretation of a listed tax is to be given binding or non-binding effect.

Here, the overall tenor of the e-mails indicates that Mirant merely sought a *generic opinion* as to whether a generator's

natural gas purchases were subject to the USUT. In fact, it is unclear as to what facts the Department's policy analyst ultimately relied on in reaching its final decision, as the e-mails do not disclose the content of the final discussion between Ms. Houchin and the analyst. More importantly, there is absolutely no indication that any of the e-mails between Mirant and the Department were published in the Indiana Register. Consequently, the Department's denial of Mirant's claim was not precluded by Indiana Code § 6–8.1–3–3. Therefore, the Court denies Mirant's cross-motion for summary judgment as to this issue.

## 2. Whether Mirant's purchases of natural gas were subject to the USUT during he period at issue

During the period at issue, Indiana imposed an income tax, the URT, on certain gross receipts "that a taxpayer receive[d] in consideration for the retail sale of utility services for consumption[.]" *See* IND.CODE ANN. §§ 6–2.3–1–4, –2–1 (West 2006). Indiana also imposed a complementary excise tax, the USUT, "on the retail consumption of utility services [2] in Indiana[.]" IND.CODE ANN. § 6–2.3–5.5–1 (West 2006) (footnote added). The USUT is complementary to the URT because it essentially

ensures that certain non-exempt retail transactions that have escaped URT liability are nonetheless taxed.[3] *See, e.g.,* IND. CODE ANN. § 6–2.3–5.5–4 (West 2006) (conditioning USUT liability on whether the transaction was taxable under the URT) (footnote added).

Whether Mirant's purchases of natural gas were subject to the USUT during the period at issue depends on whether Mirant's natural gas purchases qualified for one of the four USUT exemptions provided under Indiana Code § 6–2.3–5.5–4. During the period at issue, that statute provided that:

The retail consumption of utility services in Indiana is exempt from the [USUT] if the:

(1) transaction is subject to [the URT] ... and the [URT] is paid on the gross receipts from the utility services;

(2) gross receipts from the transaction are not taxable under IC 6–2.3–3 and the utility services are consumed for the purposes for which the gross receipts were excluded from taxation;

(3) utility services were acquired in a transaction that is wholly or par-

---

**2.** For purposes of both the URT and the USUT, "utility services" means furnishing any of the following: (1) electrical energy, (2) natural gas, (3) water, (4) steam, (5) sewage, and (6) telecommunication services. *See* IND. CODE ANN. § 6–2.3–1–14 (West 2006).

**3.** In addition, both the Department and Mirant agree that the enactment of the USUT directly resulted from the enactment of the URT. Specifically, the parties explain that the URT, which taxed the sale of utility services at a rate of 1.4%, was enacted in 2002. (*See* Pet'r Br. Opp'n Resp't Mot. Summ. J. (hereinafter, "Pet'r Br.") at 5–7; Hr'g Tr. at 7.) *See also* IND.CODE ANN. § 6–2.3–2–2 (West 2002). Subsequent to the enactment, many Indiana utility vendors increased the costs

associated with utility service sales in order to minimize the impact of the tax on their bottom lines. (*See* Hr'g Tr. at 7–8.) As a result, those vendors lost several of their Indiana customers who, in turn, purchased their utility services at a lower cost from out-of-state vendors not subject to Indiana's URT. (*See* Hr'g Tr. at 7–8.) In 2006, the Legislature enacted the USUT, which taxed the consumption of utility services at the rate of 1.4%. (*See* Hr'g Tr. at 7–8.) *See also* IND.CODE ANN § 6–2.3–5.5–3 (West 2006). The parties explain that the USUT essentially "balanced the playing field," as it requires Indiana consumers of utility services to pay the USUT if the URT has not been paid. (*See, e.g.,* Pet'r Br. at 7–9; Hr'g Tr. at 8–9, 12–13.)

tially exempt from the [URT] under IC 6–2.3–4 and the utility services are consumed for the purpose for which the utility services were exempted; or

(4) utility services were acquired in a transaction that is wholly or partially subject to a deduction from the [URT] under IC 6–2.3–5–6 and the utility services are consumed for the purpose for which the utility services deduction was given.

IND.CODE ANN. § 6–2.3–5.5–4 (West 2006). The parties agree that subsection two of this statute is at issue in this case. (*See* Resp't Br. at 5–6; Pet'r Br. at 8–9.)

During the year at issue, Indiana Code § 6–2.3–3–5 (in relevant part) provided that "[g]ross receipts do not include a wholesale sale to another generator or reseller of utility services." IND.CODE ANN. § 6–2.3–3–5(a) (West 2006) (amended 2008). In 2008, Indiana's General Assembly added a new subsection to the statute. *See* 2008 Ind. Acts 1923, Pub. L. No. 131, § 7 (*eff.* Mar. 24, 2008) (codified at I.C. § 6–2.3–3–5(c)). This new subsection provided: "[a] sale of utility services is a wholesale sale if the utility services are natural gas and the buyer consumes the natural gas in the direct production of electricity to be sold by the buyer." *Id.*

The Department argues that through its 2008 amendment to Indiana Code § 6–2.3–3–5, the General Assembly intended to

change rather than clarify the scope of what was to be considered a wholesale sale under the statute. To support its claim, the Department refers to three historical facts: 1) the Legislature declined to enact a relevant non-code provision;[4] 2) the Legislative Services Agency's (LSA) Fiscal Impact Statement implied that the amendment changed rather than clarified the statute;[5] and 3) the General Assembly's amendment of the statute was not retroactive. (Resp't Br. at 3–4, 10 (footnotes added).) In contrast, Mirant maintains that in focusing upon those historical facts, the Department simply "shoots at the wrong target." (See Pet'r Br. at 25–28.) The Court agrees with Mirant.

■ At the outset, the non-code provision upon which the Department has relied is irrelevant; it has no legal significance, as it was introduced but not enacted. *Cf. St. George Serbian Orthodox Church v. Lake County Prop. Tax Assessment Bd. of Appeals,* 905 N.E.2d 539, 541–42 (Ind. Tax Ct.2009) (recognizing that *enacted* non-code provisions have the force of law). Furthermore, the LSA's Fiscal Impact Statement has minimal persuasive value because it essentially suggests that prior to the amendment of Indiana Code § 6–2.3–3–5, sellers of natural gas were subject to the URT which, in turn, suggests that their customers (i.e., those who purchased and consumed natural gas in their production processes) would not have been sub-

---

4. This non-code provision provided: "[t]he amendment of IC 6–2.3–3–5 ... shall be interpreted to clarify and not to change the general assembly's intent with respect to IC 6–2.5–3–5." (Resp't Designation of Evidence (hereinafter, "Resp't Des'g Evid.") Ex. 8 at 612.)

5. The LSA's Fiscal Impact Statement states that *"for purposes of the [URT],* a sale of utility services is considered a wholesale sale if the utility services are natural gas and the buyer consumes the natural gas in the direct pro-

duction of electricity to be sold by the buyer." (Resp't Des'g Evid. Ex. 11 at 2 (emphasis added).) In addition, the Statement provides that the amendment would "cause an indeterminable decrease *in state URT collections ...* and w[ould] ultimately depend upon the number of utilities that are selling natural gas to a buyer that is consuming the natural gas in the direct production of electricity to be sold by the buyer of the natural gas." (Resp't Des'g Evid. Ex. 11 at 8 (emphasis added).)

ject to the USUT. *See, e.g., supra* notes 3, 5. The significance of the amendment to Indiana Code § 6–2.3–3–5, however, is an entirely different matter. Indeed, the import of that amendment turns upon whether the Legislature intended to change or clarify the statute through the amendment. *See Indiana Dep't of Revenue v. Kitchin Hospitality, LLC,* 907 N.E.2d 997, 1002 (Ind.2009) (providing that the presumption generally raised by the amendment of a statute (i.e., that the amendment changes the statute's meaning) does not apply if it appears that the amendment was passed in order to express the original intent more clearly (citing *Indiana Dep't of State Revenue v. Endress & Hauser, Inc.,* 404 N.E.2d 1173, 1175 (Ind.Ct.App.1980), *trans. denied* )).

When this Court is presented with a question of statutory interpretation, its foremost function is to determine and implement the intent of the Legislature in enacting that statutory provision. *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue,* 568 N.E.2d 578, 580 (Ind. Tax Ct.1991), *aff'd by* 585 N.E.2d 1336 (Ind.1992). Generally, the best evidence of the legislature's intent is found in the actual language of the statute itself. *See id.* at 581. To that end, the structure and the language of Indiana Code § 6–2.3–3–5 must be examined as a whole, and not piecemeal. *See State v. Adams,* 583 N.E.2d 799, 800 (Ind.Ct.App. 1992) (stating that "[e]ach part [of a statute] must be considered with reference to all other parts" of the statute) (citation omitted), *trans. denied.*

As mentioned, Indiana Code § 6–2.3–3–5 provides that "[g]ross receipts do not include a wholesale sale to another generator or reseller of utility services." A.I.C. § 6–2.3–3–5(a). Thus, the statute, by its plain terms, exempts from USUT taxation any gross receipts derived from the wholesale sale of utility services to either generators or resellers. *Id.* In so doing, however, the Legislature never defined "generator," "reseller," or "wholesale sale." While the parties primarily focus on the meaning of "wholesale sale," the Court believes that the inquiry must also give reference to the meanings of "generator" and "reseller." Indeed, the use of these nouns signals that the statute, at its most basic level, has carved out an exemption for transactions involving the wholesale sale of utility services *to generators and resellers,* otherwise those terms would be rendered surplusage. *Cf. Mynsberge v. Dep't of State Revenue,* 716 N.E.2d 629, 635 (Ind. Tax Ct.1999) (stating that "courts will not treat statutory language as surplusage, unless no other course is possible" (citing *Wilburn v. State,* 671 N.E.2d 143, 147 (Ind.Ct.App. 1996), *trans. denied* )).

To that end, a "reseller" is one who sells an item again. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1930 (2002 ed.) (defining "resell"). *See also* IND.CODE ANN. § 1–1–4–1(1) (West 2010) (providing that the undefined, non-technical words used in a statute are to be given their common, plain, ordinary and usual meanings). In turn, a "generator" is commonly understood to mean "one that generates, causes, or produces" another item or product. WEBSTER'S THIRD NEW INT'L DICTIONARY 945 (2002 ed.); A.I.C. § 1–1–4–1(1). Thus, these terms provide some clue as to what constitutes a wholesale sale under Indiana Code § 6–2.3–3–5, as they identify what subsequent actions an entity may undertake with respect to its utility service purchases (i.e., an entity may resell or consume the utility services).

■ In fact, the Department contends that a "wholesale sale" should be understood to mean "buying the natural gas from [a] utility service provider for pur-

poses of resale' " only. (Resp't Br. at 8 (quoting WEBSTER'S THIRD [NEW] INT'L DICTIONARY 2611 (1982 ed.)).) (*See also* Hr'g Tr. at 15–16.) Mirant, on the other hand, contends that the term should be given a broader meaning which comports with its "common [ ] English usage[.]" (*See* Pet'r Br. at 17.) As such, explains Mirant, a "wholesale sale" includes transactions in which an entity purchases utility services for either its direct consumption or resale. (*See* Pet'r Br. at 12–14 (*citing, e.g.*, COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY 3769 (1985) (defining "wholesale" as " 'in large numbers or amount, in abundance, profusely, extensively, indiscriminately[; s]ale in gross; dealing in a large way or in big quantities' "); WEBSTER'S THIRD NEW INT'L DICTIONARY 2611 (1992) (also defining "wholesale" as " 'of, relating to, or engaged in the sale of goods or commodities in quantity for resale[; ] performed on a large scale: handling or affecting large numbers or quantities' ")).) The Court agrees with Mirant.

The General Assembly's 2008 amendment of the statute clarifies what transactions are to be considered wholesale sales with respect to the purchase of utility services for consumption: "[a] sale of utility services is a wholesale sale if the utility services are *natural gas and the buyer consumes the natural gas in the direct production of electricity to be sold by the buyer*." 2008 Ind. Acts 1923, Pub. L. No. 131, § 7 (*eff.* Mar. 24, 2008) (codified at I.C. § 6–2.3–3–5(c) (emphasis added)). It is for this reason, that the Court finds the General Assembly, through its 2008 amendment of the statute, simply clarified its original intent. With these principles in mind, the Court now turns to the facts of this case.

■ Neither party disputes that, during the period at issue, Mirant was engaged in the business of both generating and selling electricity to others. In addition, it is undisputed that Mirant purchased natural gas in order to generate electricity, used the natural gas to actually generate electricity, and subsequently sold the electricity it generated to another entity. Consequently, during the period at issue, Mirant's purchases of natural gas were not subject to the USUT pursuant to Indiana Code sections 6–2.3–3–5 and 6–2.3–5.5–4(2).

## CONCLUSION

For the above stated reasons, the Court DENIES the Department's motion for summary judgment in its entirety. The Court, however, GRANTS Mirant's cross-motion for summary judgment in part. Accordingly, the Department's December 4, 2007 order is REVERSED and the Department is ordered to refund to Mirant the USUT taxes it paid for the period at issue.

SO ORDERED.