ATTORNEY FOR PETITIONER:
**BRETT J. MILLER**
BINGHAM GREENEBAUM DOLL, LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA E. REAGAN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED
Aug 06 2015, 2:51 pm
CLERK
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| HAMILTON SOUTHEASTERN UTILITIES, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 49T10-1210-TA-00068 |
| | ) | |
| INDIANA DEPARTMENT OF STATE REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**August 6, 2015**

WENTWORTH, J.

Hamilton Southeastern Utilities, Inc. challenges the Indiana Department of State Revenue's assessment of Indiana's utility receipts tax (URT) on system development charges and connection fees it collected during the 2006, 2007, and 2008 tax years (the years at issue). This matter is currently before the Court on the parties' cross-motions for summary judgment, which present one issue: whether Hamilton Southeastern's system development charges and connection fees are gross receipts subject to the URT.

**FACTS AND PROCEDURAL HISTORY**[1]

The following facts are not in dispute. Hamilton Southeastern is a domestic business corporation that provides sewage collection and disposal services to 17,000 customers in Hamilton County, Indiana. (See Pet'r Br. Supp. Cross-Mot. Summ. J. ("Pet'r Br.") at 5.) (See also Pet'r Des'g Evid. Supp. Resp. Resp't Mot. Summ. J. ("Pet'r Des'g Evid.") at 2 ¶ 6 (indicating that Hamilton Southeastern designated its Brief in Support of its Cross-Motion for Summary Judgment as evidence).) Hamilton Southeastern charges its customers a fixed, monthly rate in exchange for these services. (See Pet'r Original Tax Appeal Pet. ("Pet'r Pet.") ¶ 10.) (See also Pet'r Des'g Evid. at 2-3 ¶ 7(G) (indicating that Hamilton Southeastern designated portions of its Petition as evidence).)

Hamilton Southeastern also charges two other one-time fees as new properties are developed and built. (See Pet'r Br. at 6-11.) The first is the system development charge that is "an amount which the [Indiana Utility Regulatory Commission] permits [Hamilton Southeastern] to collect, consistent with a tariff, to be used for future expansion of the sewer services provided by [Hamilton Southeastern]." (See Pet'r Des'g Evid., Ex. 1 ¶ 14.) More specifically, Hamilton Southeastern charges $2,400 per equivalent dwelling unit (EDU)[2] each time a new customer is added to its sewage system. (See Pet'r Br. at 6-7.) This charge is generally paid by the property developer before he conveys the property to the buyer. (See Pet'r Pet. ¶¶ 18, 21.) Of the $2,400,

---

[1] Portions of the parties' designated evidence are confidential. Consequently, this order will provide only the information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

[2] One equivalent dwelling unit equals the amount of wastewater treatment plant capacity necessary to service 300 gallons per day. (See Resp't Confd'l Des'g Evid., Ex. B at 56.)

Hamilton Southeastern remits $1,050 to the Town of Fishers, Indiana pursuant to a Wholesale Sewer Agreement in order to purchase additional sewage treatment capacity. (See Pet'r Pet. ¶ 15; Pet'r Br. at 6-7.) Hamilton Southeastern retains the remaining $1,350 for future capital improvements and projects including, among other things, installing new equipment and lift stations (thereby increasing capacity in its own sewage collection and disposal system). (See Pet'r Pet. ¶ 23.)

The second charge is the connection fee that is $305 per EDU. (See Pet'r Pet. ¶ 31.) The connection fee is imposed during the construction of a home or other structure and is generally paid by the builder. (See Pet'r Pet. ¶¶ 31, 33.) In exchange for the connection fee, Hamilton Southeastern has its agent inspect the sewer line to determine whether it can be connected to the sewer system. (See Pet'r Pet. ¶ 32.) After payment of the connection fee and the inspection, Hamilton Southeastern issues a permit. (See Pet'r Br. at 10.) The builder takes this permit to Fishers, and after confirming the builder has paid the connection fee, Fishers issues the builder a building permit. (See Pet'r Pet. ¶ 35.)

In August of 2010, the Department completed an audit of Hamilton Southeastern. (See Resp't Confd'l Des'g Evid., Ex. A at 26.) As a result, the Department issued proposed URT assessments, including interest and penalties on, among other things, Hamilton Southeastern's receipts from its system development charges and connection fees. (See Resp't Confd'l Des'g Evid., Ex. A at 2-13, 29-30, 35.)

Hamilton Southeastern protested the proposed assessments. (See Resp't Confd'l Des'g Evid., Ex. B at 2-10.) (See also Pet'r Des'g Evid. at 2 (stating that Hamilton Southeastern designated all evidence that was designated by the

Department).)  On August 31, 2012, after conducting an administrative hearing, the Department issued a Letter of Findings denying Hamilton Southeastern's protest.  (See Resp't Confd'l Des'g Evid., Ex. A at 14-25.)

Hamilton Southeastern initiated this original tax appeal on October 29, 2012. Hamilton Southeastern and the Department filed cross-motions for summary judgment, and the Court held a hearing on the motions on September 5, 2014.  Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Ind. Trial Rule 56(C).  Cross-motions for summary judgment do not alter this standard.  Mirant Sugar Creek, LLC v. Indiana Dep't of State Revenue, 930 N.E.2d 697, 699 (Ind. Tax Ct. 2010).

## LAW

Indiana imposes URT on "the entire taxable gross receipts of a[n Indiana resident][.]"  IND. CODE § 6-2.3-2-1(1) (2006).  As used in the imposition statute above, the term "gross receipts" means "anything of value, including cash or other tangible or intangible property, that a taxpayer receives in consideration for the retail sale of utility services for consumption before deducting any costs incurred in providing the utility services."  IND. CODE § 6-2.3-1-4 (2006).  Nonetheless, "gross receipts" that are subject to the URT are limited to those received in exchange for the "installation, maintenance, repair, equipment, or leasing services provided to a commercial or domestic consumer that are directly related to the delivery of utility services to the commercial or domestic consumer or the removal of equipment from a commercial or domestic consumer upon

4

the termination of service." IND. CODE § 6-2.3-3-10 (2006).

## ANALYSIS

On appeal, the Department claims that pursuant to Indiana Code §§ 6-2.3-1-4 and 6-2.3-3-10, Hamilton Southeastern's system development charges and connection fees are gross receipts subject to URT. (See Resp't Br. Supp. Mot. Summ. J. ("Resp't Br.") at 6-8.) Alternatively, the Department contends that the connection fees are subject to URT because Hamilton Southeastern did not separate them from other taxable receipts on its records or returns as required by Indiana Code § 6-2.3-3-2. (See Resp't Reply Pet'r Responsive Br. ("Resp't Reply Br.") at 3.)

### Indiana Code § 6-2.3-1-4

The first question before the Court is whether Hamilton Southeastern's system development charges and connection fees are gross receipts subject to the URT under Indiana Code § 6-2.3-1-4. The resolution of this issue depends on whether Hamilton Southeastern receives the system development charges and connection fees "in consideration for the retail sale of utility services for consumption[.]" I.C. § 6-2.3-1-4 (emphases added).

When confronted with a question of statutory construction, the Court's role is to determine and implement the intent of the Legislature in enacting that statutory provision. See Johnson Cnty. Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue, 568 N.E.2d 578, 580 (Ind. Tax Ct. 1991), aff'd by 585 N.E.2d 1336 (Ind. 1992). Generally, the actual language of the statute itself, as chosen by the Legislature, is the best evidence of this intent. See id. at 581.

For purposes of the URT, "utility service" means, among other things, "the

5

furnishing of . . . [s]ewage (as defined in IC 13-11-2-200)." IND. CODE § 6-2.3-1-14(5) (2006). In turn, "sewage" is defined in Indiana Code § 13-11-2-200 as "all refuse, human excreta, garbage, waste or waste products, or any combination of these substances that: (1) is potentially capable of contaminating the environment; and (2) may be collected and carried off in a pipe, ditch, or channel." IND. CODE § 13-11-2-200 (2006). Accordingly, the plain language of Indiana Code §§ 6-2.3-1-14(5) and 13-11-2-200 in tandem indicates that sewage utility services are services that remove sewage. See DeKalb Cnty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010) (explaining that a statute must be read in such a way that prevents an illogical or absurd result).

The Department contends, however, that the URT's definition of a sewage utility service must be informed by the broader definition of "sewage disposal service" found in Indiana's utility regulatory laws. Specifically, the Department cites Indiana Code § 8-1-2-89(a)(1), which states:

> "Sewage disposal service" means any public utility service whereby liquid and solid waste, sewage, night soil, and industrial waste of any single territorial area is collected, treated, purified, and disposed of in a sanitary manner, and includes all sewage treatment plant or plants, main sewers, submain sewers, local and lateral sewers, intercepting sewers, outfall sewers, force mains, pumping stations, ejector stations, and all other equipment and appurtenances necessary or useful and convenient for the rendition of such service.

IND. CODE § 8-1-2-89(a)(1) (2006) (emphasis added).[3] The Department's apparent rationale is that this broader definition, which includes infrastructure and equipment as

_____

[3] The Department also cites to one of its regulations, which contains similar language to Indiana Code § 8-1-2-89(a)(1). Compare 170 IND. ADMIN. CODE 8.5-1-1 (2006) (see http://www.in.gov/legislative/iac/) with IND. CODE § 8-1-2-89(a)(1) (2006).

6

well as removal services, is relevant to the definition of sewage utility services for purposes of the URT because Indiana had already defined and developed the meaning for utility regulatory purposes.  (See Hr'g Tr. at 10.)

The Department's reasoning is unpersuasive because the Legislature has given no indication that a broader definition applies.  The Legislature is presumed to say what it means.  Hyatt Corp. v. Dep't of State Revenue, 695 N.E.2d 1051, 1053 (Ind. Tax Ct. 1998), review denied.  Here, the Legislature did not define a sewage utility service by reference to Indiana Code § 8-1-2-89(a)(1); instead, it referred to the definition under Indiana Code § 13-11-2-200.  See Scopelite v. Indiana Dep't of Local Gov't Fin., 939 N.E.2d 1138, 1143 (Ind. Tax Ct. 2010) (explaining that when construing statutes, it is equally as important to recognize what they do not say as it is to recognize what they do say).  Accordingly, as defined in Indiana Code § 6-2.3-1-4, sewage utility service refers simply to furnishing the removal services themselves, nothing more.

Nonetheless, the Department further argues that the system development charges and connection fees must by necessity be gross receipts under the URT definition because they are mandatory, necessary, and essential for the provision of utility services, i.e., but for their payment, no sewage services for consumption would exist.  (See Resp't Br. at 6; Hr'g Tr. at 12, 32.)  The claim that necessity breeds inclusion, however, is not grounded by the words of the statute itself, and therefore, the Court will not read this into the statute.  See DeKalb, 930 N.E.2d at 1260 (explaining that when the language of a statute is clear and unambiguous, the Court may not expand or contract the meaning of a statute by reading into it language to correct any supposed omissions or defects); see also SAC Fin., Inc. v. Indiana Dep't of State

7

<u>Revenue</u>, 24 N.E.3d 541, 547 (Ind. Tax Ct. 2014) (explaining that because the Legislature has intentionally chosen its language, the Court will not expand or contract the meaning of a statute by reading language into it to correct supposed omissions), <u>review denied</u>. Consequently, neither the system development charges nor the connection fees are gross receipts subject to the Indiana URT pursuant to Indiana Code § 6-2.3-1-4.

**Indiana Code § 6-2.3-3-10**

Next, the Court must determine whether Hamilton Southeastern's system development charges and connection fees are gross receipts subject to the URT under Indiana Code § 6-2.3-3-10. The Department claims that they are because they are both paid in consideration for services that are <u>directly related</u> to the delivery of sewage utility services to the consumer. (<u>See</u> Resp't Br. at 7-8; Resp't Reply Br. at 3-6; Hr'g Tr. at 18-19, 27.)

Chapter 3 of the URT statutory framework identifies specific receipts that are taxable gross receipts even if they fail to meet the definition under Indiana Code § 6-2.3-1-4. <u>See</u> <u>generally</u> IND. CODE §§ 6-2.3-3-1 to -10. For instance, Indiana Code § 6-2.3-3-10 states:

> [g]ross receipts include receipts received for installation, maintenance, repair, equipment, or leasing services provided to <u>a</u> commercial or domestic consumer that are directly related to the delivery of utility services to <u>the</u> commercial or domestic consumer or the removal of equipment from a commercial or domestic consumer upon the termination of service.

I.C. § 6-2.3-3-10 (emphases added). In other words, this provision includes as gross receipts those receipts that are: 1) received for an <u>enumerated service</u>, 2) the

8

enumerated service is provided to <u>a</u> consumer, and 3) the enumerated service is directly related to the delivery of (sewage) utility services to <u>the</u> (same) consumer. <u>See</u> I.C. § 6-2.3-3-10.

The grammatical structure of Indiana Code § 6-2.3-3-10 does not support finding that Hamilton Southeastern's system development charges and connection fees are taxable gross receipts. <u>See</u> <u>Clifft v. Indiana Dep't of State Revenue</u>, 660 N.E.2d 310, 316 (Ind. 1995) (explaining that when interpreting a statute, the Court will examine the statute as a whole, including the grammatical structure of the clause or sentence at issue). Specifically, the statute initially refers to "a" consumer, using the indefinite article to refer to anyone who consumes one or more of the enumerated services. Then, the statute requires the enumerated services to be "directly related" to the delivery of (sewage) utility services to the same consumer, by the use of the definite article "the." <u>See</u> THE CHICAGO MANUAL OF STYLE §§ 5.69-5.70 at 222-23 (16th ed. 2010) (explaining that the use of an indefinite article points to nonspecific objects, things, or persons that are not distinguished from the other members of a class; the use of a definite article points to a definite object that is a thing that is so well understood that it does not need description). <u>See</u> <u>also</u> <u>Enhanced Telecomm. Corp. v. Indiana Dep't of State Revenue</u>, 916 N.E.2d 313, 319 (Ind. Tax Ct. 2009) (explaining that to qualify as a gross receipt under Indiana Code § 6-2.3-3-10, the receipt "must be received in the course of providing such services 'to a consumer that are directly related to the delivery of utility services to th[at] consumer'") (citation omitted), <u>review denied</u>. Thus, even if the Department was correct that Hamilton Southeastern's installation and inspection services are "directly related" to its provision of sewage utility services, Indiana Code §

9

6-2.3-3-10 could not apply to Hamilton Southeastern's receipts that are paid by property developers, not by the consumers of its sewage utility services. (See Pet'r Br. at 9.) Consequently, neither the system development charges nor the connection fees are gross receipts pursuant to Indiana Code § 6-2.3-3-10.

### Indiana Code § 6-2.3-3-2

Finally, the Department argues that even if the connection fees are not subject to the URT under Indiana Code § 6-2.3-1-4 or Indiana Code § 6-2.3-3-10, they are taxable under Indiana Code § 6-2.3-3-2. Indiana Code § 6-2.3-3-2 states that "receipts that would otherwise not be taxable under this article are taxable gross receipts under this article to the extent that the amount of the nontaxable receipts are not separated from taxable receipts on the records or returns of the taxpayer." IND. CODE § 6-2.3-3-2 (2006). The Department claims that Hamilton Southeastern's connection fees were not separately stated from the taxable receipts on either Hamilton Southeastern's records or returns. (See Resp't Reply Br. at 3.) To support this claim, the Department designated as evidence one page from its Letter of Findings and one page from the Audit Report's Explanation of Adjustments, both stating that Hamilton Southeastern's connection fees were not separately stated. (See Resp't Confd'l Des'g Evid., Ex. A at 20, 29.)

Hamilton Southeastern failed to designate any evidence disputing the Department's claim; nonetheless, summary judgment cannot be granted to the Department solely because Hamilton Southeastern failed to offer opposing evidence. See T.R. 56 (C) (stating that "[s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court"). Here,

10

the Department's designated evidence in the Audit Report indicates with some particularity that the connection fees were not separated from taxable receipts on Hamilton Southeastern's records.  (See Resp't Confd'l Des'g Evid., Ex. A at 29.) Specifically, the Explanation of Adjustments stated that Hamilton Southeastern's connection fee account included other taxable fees such as "receipts collected from developers in order for them to use HSE's sewer system," such as engineering fees. (See Resp't Confd'l Des'g Evid., Ex. A at 29.)  On the contrary, the Department failed to designate evidence showing whether Hamilton Southeastern's returns separate the connection fee from taxable receipts.  (See Resp't Confd'l Des'g Evid., Ex. A at 20, 29.) Accordingly, it is reasonable to infer that Hamilton Southeastern may have separated its nontaxable from its taxable gross receipts on its returns.  See U-Haul Co. of Ind., Inc. v. Indiana Dep't of State Revenue, 896 N.E.2d 1253, 1255 (Ind. Tax Ct. 2008) (explaining that the Court draws all reasonable inferences in favor of the non-moving party when resolving motions for summary judgment).  Consequently, there is a genuine issue of material fact whether Indiana Code § 6-2.3-3-2 converts Hamilton Southeastern's nontaxable connection fees into gross receipts subject to URT.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS summary judgment in favor of Hamilton Southeastern and against the Department on the first two issues.  With respect to the third issue, there is a genuine issue of material fact.  Accordingly, the

11

Court will schedule a case management conference by separate order.[4]

SO ORDERED this 6th day of August 2015.

_____
Martha Blood Wentworth
Judge, Indiana Tax Court

DISTRIBUTION:

Brett J. Miller, Jessica E. Reagan

---

[4]  Hamilton Southeastern has asked this Court to strike Exhibit C from the Department's designated evidence because it is not relevant, it would cause confusion of the issues, it contains inadmissible hearsay, and it is not reliable.  (See Pet'r Br. Supp. Cross-Mot. Summ. J. at 28.)  Because of the disposition of this case, the Court denies Hamilton Southeastern's Motion to Strike.