**Dale J. SCOPELITE and James T. Sheehan, Petitioners,**

**v.**

**INDIANA DEPARTMENT OF LOCAL GOVERNMENT FINANCE, Respondent.**

No. 49T10–0812–TA–71.

Tax Court of Indiana.

Oct. 28, 2010.

Publication Ordered Nov. 22, 2010.

Dale J. Scopelite, James T. Sheehan, Hammond, IN, Pro Se, Petitioners.

Gregory F. Zoeller, Attorney General of Indiana, John D. Snethen, Nancy M. Hauptman, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

On November 7, 2008, the Department of Local Government Finance (DLGF) issued a final determination approving the City of Hammond's (City) budget and tax levy for the 2008 tax year. Dale J. Scopelite and James T. Sheehan (hereinafter, the Petitioners) challenge that final determination. While the Petitioners present ten issues for the Court's review (*see* Petrs' Br. at 1–2), the Court consolidates and restates those issues as:

I.    Did the DLGF deny the Petitioners due process when it conducted its hearing on the taxpayers' objection statement on October 30, 2008?

II.    Did the DLGF fail to follow the law when it did not provide written determinations and statements on each of the taxpayers' fifty-nine objections?

III.    Did the DLGF err in concluding that the City had not exceeded its debt limit?

IV.    Did the DLGF err in approving the City's budget?

## RELEVANT FACTS AND PROCEDURAL HISTORY

In September of 2007, the City, through its authorized officers and after several public hearings, adopted its budget and correlating property tax levy for 2008. (*See* Petrs' V. Pet. for Judicial Review (hereinafter, "Pet.") Ex. 1 at 4 ¶ 1; Ex. 2 at 35.) On May 3, 2008, the Auditor of Lake County, Indiana (Auditor) posted notice advising City taxpayers of the rates to be charged in order to generate the approved property tax levy. (*See* Pet. Ex. 4.)

On May 9, 2008, a group of taxpayers (which included the Petitioners) initiated an appeal by filing an objection statement with the Auditor. In their statement, the taxpayers explained that over the course of several years, the City had "recklessly" spent money it did not have, forcing taxpayers to make up the shortfall through higher property taxes. (*See* Pet. Ex. 2 at

2–3.) Consequently, in an effort to compel more responsible fiscal management from City officers, the taxpayers' statement contained a list of fifty-nine objections to the City's budget, tax levy, and related tax rates.[1] (Pet. Ex. 2 at 5–16 (footnote added).) The Auditor forwarded the matter to the DLGF.

On October 30, 2008, the DLGF conducted a hearing on the taxpayers' objections. On November 7, 2008, the DLGF issued a final determination in the matter in which it denied the taxpayers' petition and approved the City's 2008 budget. In so doing, the DLGF did not address each of the taxpayers' objections individually; rather, it construed them collectively as representing four objections to the City's budget, tax levy, and tax rates: (1) the City's expenditures were "reckless"; (2) the City's budget estimates were inaccurate; (3) the City exceeded its 2% constitutional debt limit; and (4) the City was inefficiently administered. (Cf. Pet. Ex. 1 at 1, 4 ¶ 3 with Ct. Ex. A.)

On December 18, 2008, the Petitioners initiated an original tax appeal. The Court conducted oral argument on September 4, 2009. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### I.

### Did the DLGF deny the Petitioners due process when it conducted its hearing on the taxpayers' objection statement on October 30, 2008?

Each year, local government units pay their operating costs and expenditures, in part, through the collection of property taxes. Consequently, each unit is required, annually, to formulate an estimated budget, proposed tax levy,[2] and proposed tax rates[3] for the ensuing year. See generally IND.CODE ANN. §§ 6–1.1–17–3, –5 (West 2007) (amended 2008) (footnotes added). In order to make these formulations, each unit relies on information it receives from its county auditor regarding the assessed valuation within the district and the estimated tax collection thereon. See generally IND.CODE ANN. § 6–1.1–17–1(a) (West 2007) (amended 2008).

Once the unit has completed its formulations, it is required to provide taxpayers within the taxing district notice of, and an opportunity to be heard on, "(1) the estimated budget; (2) the estimated maximum permissible levy; (3) the current and proposed tax levies of each fund; and (4) the amounts of excessive levy appeals to be requested." A.I.C. § 6–1.1–17–3(a). After the public hearing but before November 2, the unit is to "fix" (adopt) its budget, tax levy, and tax rates.[4] See generally A.I.C. § 6–1.1–17–5(a)(2) (footnote added).

1. The Court has prepared and attached to this opinion "Court Exhibit A," which lists the fifty-nine objections and organizes them into six general categories.

2. Property taxes in Indiana are budget-driven. See, e.g., U.S. Steel Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals, 785 N.E.2d 1209, 1212 (Ind. Tax Ct.2003) (internal citation omitted), rev'd in part on other grounds, 820 N.E.2d 1237 (Ind.2005). The term "levy," therefore, describes the aggregate dollar amount of revenue needed—and subsequently imposed through property taxes—in order to fund a given operation of local government. In this case, the City's "proposed tax levy" was the amount of tax revenue the City anticipated it needed in order to pay its expenses.

3. In a budget-driven property tax system, tax rates are mathematical results. Id. In other words, once a budget is agreed upon, the amount of the budget is divided by the taxing unit's assessed value; the resulting quotient is the tax rate. Id. Consequently, in this case, the City's proposed tax rates were those rates which, when applied against the total assessed value within its taxing boundaries, would generate its proposed tax levy.

4. At this point, taxpayers are given another opportunity to object. See IND.CODE ANN § 6–1.1–17–5(b) (West 2007). If taxpayers do object, "the [unit] shall adopt with its budget a

Once the budget has been adopted, the county auditor is to prepare and post notice to taxpayers of the tax rates to be charged on each $100 of assessed valuation in order to generate the unit's levy. *See generally* IND.CODE ANN. § 6–1.1–17–12 (West 2007) (amended 2008). Within ten days of the auditor's posting, taxpayers "may initiate an appeal ... by filing a statement of their objections with the county auditor." *See generally* IND.CODE ANN. § 6–1.1–17–13(a) (West 2007) (amended 2009). "The statement shall specifically identify the provisions of the budget, tax rate, or tax levy to which the taxpayers object." *Id.* The DLGF is to conduct a hearing on the taxpayers' objections and, after considering their testimony and evidence, issue a "written determination [ ] and ... statement of findings[.]" *Id.* at (b)(3). In conjunction with the hearing on the taxpayers' objection statement, the DLGF may also hold the hearing required under Indiana Code § 6–1.1–17–16. *See id.* at (b). *See also* IND.CODE ANN. § 6–1.1–17–16(c) (West 2007) (explaining that before the DLGF may review, revise, reduce, or increase a budget by fund, tax rate, or tax levy, it must hold a public hearing). The DLGF "is expressly directed to complete the[se] duties ... not later than February 15th of each year for taxes to be collected during that year." *Id.* at (h).

On appeal, the Petitioners explain that the DLGF did not conduct its hearing on the taxpayers' objection petition until October 30, 2008, well after the mandatory February 15 deadline. (Petrs' Br. at 17.) As a result, the Petitioners claim that the DLGF denied them due process[5] "[because it] allowed the [C]ity ... to implement the [ ] budget prior to the objection hearing[.]" (Oral Argument Tr. at 16 (footnote added).) The Court, however, must disagree for two reasons.

■ First, the February 15 deadline set forth in Indiana Code § 6–1.1–17–16(h) is not a mandatory one. Admittedly, to say that the DLGF "is expressly directed" to do something connotes a mandatory import. *See, e.g., Huntington County Cmty. Sch. Corp. v. Indiana State Bd. of Tax Comm'rs,* 757 N.E.2d 235, 240 (Ind. Tax Ct.2001) (explaining, for example, that the terms "must" and "shall" connote mandatory import). Nevertheless, phrases and terms that appear mandatory may, at times, be construed as directory in order " 'to prevent the defeat of the legislative intent.' " *In re Middlefork Watershed Conservancy Dist.,* 508 N.E.2d 574, 578 (Ind.Ct.App.1987) (citation omitted). More specifically, such phrases and terms will be construed as directory when the

---

finding concerning the objections ... and any testimony presented at the adoption hearing." *Id.* at (c).

**5.** Both federal and state constitutions guarantee the right to due process. *See* U.S. Const. amend. XIV, § 1 (declaring that no person shall be deprived "of life, liberty, or property, without due process of law"); IND. CONST. art. 1, § 12 ("every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law"). *See also Dalton Foundries, Inc. v. State Bd. of Tax Comm'rs,* 653 N.E.2d 548, 553 (Ind. Tax Ct.1995) (explaining that the extraction of a

tax constitutes a deprivation of property); *Haimbaugh Landscaping, Inc. v. Jegen,* 653 N.E.2d 95, 104 (Ind.Ct.App.1995) (explaining that the federal and state due process guarantees are analogous), *trans. denied.* Due process contains both procedural and substantive elements: the procedural due process element requires that taxpayers be provided with notice and a meaningful opportunity to be heard before a tax liability is finally fixed; the substantive due process element requires that taxation not be arbitrary, oppressive, or unjust. *See Griffin v. Dep't of Local Gov't Fin.,* 794 N.E.2d 1171, 1176 (Ind. Tax Ct.2003), *review denied.*

statute in which they are contained fails to specify adverse consequences, the provision does not go to the essence of the statutory purpose, and a mandatory construction would thwart the legislative purpose. *Id.* (citation omitted).

Here, Indiana Code § 6–1.1–17–16 does not specify any adverse consequences in the event the DLGF fails to complete its duties by February 15. Such silence leads the Court to conclude that the legislature's purpose behind the specified date is simply to keep the budget process "moving along" and, ultimately, to ensure that the DLGF has final review on both budgets and taxpayer objections thereto. *See, e.g., Whetzel v. Dep't of Local Gov't Fin.,* 761 N.E.2d 904, 908 (Ind. Tax Ct.2002) (explaining that when construing statutes, it is equally as important to recognize what they do not say as it is to recognize what they do say) (citation omitted). This legislative purpose would be thwarted if the February 15 date was construed as a mandatory deadline: when the DLGF received the taxpayers' objection statement in May of 2008, it would have been precluded from reviewing it, along with the City's budget. *Cf. with Bd. of Comm'rs of Marion County v. W. Elec. Co.,* 198 Ind. 417, 153 N.E. 177, 178 (1926) (explaining that when statutory provisions are for the benefit and protection of taxpayers, they are construed as mandatory; when statutory provisions are designed to merely secure order, system, and dispatch in proceedings, they are construed as directory) (citation omitted).

Second, with respect to the Petitioners' allegation that the City implemented its budget prior to the DLGF's hearing on October 30, 2008, there is no evidence in the record to substantiate that allegation. In fact, both parties acknowledge that tax anticipation warrants were issued in order to fund the City's operation while the budget approval process was being completed. (*See* Oral Argument Tr. at 16, 29.) *See also* BLACK'S LAW DICTIONARY 1724 (9th ed.2009) (defining tax anticipation warrants as short-term loans made to local governmental units that are to be payable out of tax receipts when collected).

The Petitioners have not shown that they were denied due process when the DLGF conducted its hearing on the taxpayers' objection statement on October 30, 2008. Accordingly, the Petitioners' claim as to this issue is denied.[6]

## II.

**Did the DLGF fail to follow the law when it did not issue written determinations and statements on each of the taxpayers' fifty-nine objections?**

■ Next, the Petitioners take issue with the manner by which the DLGF, in its final determination, addressed the taxpayers' objections. Specifically, the Petitioners argue that pursuant to Indiana Code § 6–1.1–17–13, the DLGF was required to provide written determinations and statements on *each* of the fifty-nine objections.[7] (*See* Petrs' Br. at 20–21 (foot-

---

**6.** The Court is unable to discern, from either of the parties or the administrative record, why the Auditor did not post notice of the City's budget adoption until May 3, 2008. *Cf. with* IND.CODE ANN. § 6–1.1–17–12 (West 2007) (amended 2008) (stating that the auditor is to post notice within fifteen days of the budget's adoption). In any event, once the Auditor posted notice, the taxpayers were able to pres-

ent an objection petition to the DLGF, and the DLGF conducted a hearing thereon. Consequently, City taxpayers were afforded the due process to which they were entitled under Indiana Code § 6–1.1–17–13 and Indiana Code § 6–1.1–17–16.

**7.** The Petitioners also maintain that in failing to issue fifty-nine separate findings and written statements, the DLGF violated Indiana

note added).) (*See also* Oral Argument Tr. at 17.) The Petitioners are incorrect.

Indiana Code § 6–1.1–17–13 provides that after the DLGF conducts its hearing on an objection statement, it shall "consider the testimony and evidence submitted at the hearing" and then "mail [its] . . . written determination [ ] and . . . written statement of findings[.]" A.I.C. § 6–1.1–17–13(b)(3). This statute does not require that the DLGF's final determination/statement of findings be in a particular format and the Court will not read into it such a requirement. *See Kohl's Dep't Stores, Inc. v. Indiana Dep't of State Revenue*, 822 N.E.2d 297, 300 (Ind. Tax Ct.2005) (explaining that the Court will not expand or contract the meaning of a statute by reading into it language that is not there). Accordingly, the Petitioners' claim as to this issue is also denied.

## III.

### Did the DLGF err in concluding that the City had not exceeded its debt limit?

Indiana's Constitution provides that

No political or municipal corporation in [Indiana] shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate, exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness; and all

bonds or obligations, in excess of such amount, given by such corporations, shall be void[.]

IND. CONST. art. 13, § 1. This constitutional provision is codified at Indiana Code § 36–1–15–6:

a political subdivision may not become indebted in any manner or for any purpose in an amount in the aggregate that exceeds two percent (2%) of the latest adjusted value of taxable property determined for the political subdivision immediately preceding the incurring of the indebtedness.

IND.CODE ANN. § 36–1–15–6 (West 2007).

On appeal, the Petitioners claim that the DLGF's final determination must be reversed because the DLGF not only erred in calculating the amount of debt to which the City was allowed, but erred in determining that the City had not exceeded that debt limitation. The Court will address each of the Petitioners' claims in turn.

#### a)

■ In its final determination, the DLGF explained that "[t]he latest adjusted value of taxable property in [the City] is $820,036,594. Therefore, the maximum that [the City] can be indebted is $16,400,731." (Pet. Ex. 1 at 5 ¶ 11.)[8] The Petitioners complain that the DLGF "did not state or explain its basis or provide any supporting data and any reliable evidence as to how [it] determined [that the] 'latest adjusted value of property in [the

Code § 33–26–6–4. (*See* Petrs' Br. at 21.) (*See also* Oral Argument Tr. at 22.) The Petitioners' reliance on this statute, however, is misplaced, as it addresses the standard utilized by this Court when reviewing decisions of the Indiana Board of Tax Review. *See* IND.CODE ANN. § 33–26–6–4 (West 2009).

8. For purposes of debt limitations, the DLGF is responsible for calculating the adjusted value of taxable property within each political

subdivision. *See* IND.CODE ANN. §§ 36–1–15–3, –5 (West 2007). *But see also* IND.CODE ANN § 36–1–15–9 (West 2007) (explaining that the DLGF will not be held liable if it makes an error in its calculation). The adjusted value of taxable property in a political subdivision is equal to the total value of the taxable property therein (using 100% of true tax value) divided by three. IND.CODE ANN. § 36–1–15–4 (West 2007).

City] is $820,036,594.' " (Petrs' Br. at 23.) The Petitioners also argue that the City's latest adjusted value is only $758,532,923; in turn, they maintain that while the City's total aggregate debt limitation is $46 million under the Indiana Constitution, the City's bond debt limitation is $15.2 million under Indiana Code § 36–1–15–2(2).[9] (*See* Petrs' Br. at 22; Petrs' Reply Br. at 3–4 (footnote added).) The Petitioners' argument misses the mark for two reasons.

■ First, in challenging the propriety of the DLGF's final determination, the Petitioners bear the burden of demonstrating its invalidity. *See, e.g., Clark–Pleasant Cmty. Sch. Corp. v. Dep't of Local Gov't Fin.*, 899 N.E.2d 762 (Ind. Tax Ct.2008). Thus, the Petitioners must show the Court that there is evidence in the administrative record that does not support the DLGF's finding that the City's latest adjusted value was $820,036,594. The Petitioners have not, however, provided the Court with any explanation as to why they believe that the City's latest net assessed value is $758,532,923, nor have they provided any citations to evidence contained in the administrative record that would support that belief. (*See* Petrs' Br. at 21–30; Petrs' Reply Br. at 11–18.) (*See also* Oral Argument Tr. at 23–26, 36–38.) This Court does not bear the burden of searching the administrative record to find support for the Petitioners' argument and, thus, deems the Petitioners' argument waived. *See, e.g., Clark v. Dep't of Local*

*Gov't Fin.*, 779 N.E.2d 1277, 1282 n. 4 (Ind. Tax Ct.2002) (explaining that taxpayers must walk the Court through every element of their analysis; it is not enough for taxpayers to merely claim they made a prima facie case without explanation or to cite to "large swathes" of the record as though the evidence speaks for itself). *See also Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind.Ct.App.2004) (explaining that pro se litigants are held to the same standard as legal counsel; poorly developed, noncogent arguments are waived).[10]

■ Second, the Petitioners' argument that Indiana Code § 36–1–15–2(2) created a $15.2 million bond limit for the City is incorrect. That statute states:

> It is the intent of the general assembly that the amount of debt incurred by a political subdivision after February 28, 2001, not exceed, in the aggregate, the amount of debt that the political subdivision could have incurred under:
>
> (1) Article 13, section 1, of the Constitution of the State of Indiana; and
>
> (2) any statute imposing an assessed value limitation on the aggregate amount of bonds that a political subdivision may issue;
>
> if the property were assessed at thirty-three and one-third percent (33.33%) of true tax value.

IND.CODE ANN. § 36–1–15–2 (West 2007). In other words, the statute provides that, in certain instances (i.e., when there is a

---

9. Actually, the Petitioners stated that the City's latest adjusted value is "$58,532,923"; it is apparent to the Court, however, that the Petitioners meant to say "$758,532,923." (*See* Petrs' Br. at 22.)

10. Notwithstanding, it appears that the Petitioners may have relied on a DLGF "Budget Order" that certifies the City's assessed value at $2,275,598,770 (which, when divided by three, equals $758,532,923). (*See* Petrs' Supp'l Exs. Ex. 8.) But as other evidence in

the administrative record reveals (evidence proffered by the Petitioners themselves), that certification is not for the year at issue. (*See* Petrs' Supp'l Exs. Ex. 9 at 2 (indicating that that assessed valuation was valid for the 2007 budget year)); Ex. 16 at 9 (indicating that the for the 2008 budget year, the DLGF certified the City's assessed value at $2,460,109,781 (which when divided by three, equals $820,036,594).)

statute imposing a limitation on aggregate bond issuance), a political subdivision's debt limitation may actually exceed 2%.

The Petitioners have not shown that the DLGF erred in calculating the amount of debt to which the City was allowed. Accordingly, the DLGF's determination that the City's debt limitation was $16,400,731 stands.

### b)

■ Next, the Petitioners contend that the DLGF erred when it determined that the City had not exceeded its debt limitation. To support their claim, the Petitioners state that pursuant to the City's "CTAR–2" Report, the City has debt of $95,957,294—well over the $16,400,731 limit. (*See* Petrs' Br. at 24, 26.) (*But see also* Petrs' Br. at 29; Oral Argument Tr. at 23–24 (where Petitioners allege that because a tax anticipation warrant, a judgment against the City, and a loan were not accounted for in the "CTAR–2" Report, the City's debt is closer to $117 million).)

The "CTAR–2" Report states that as of December 31, 2007, the City had outstanding redevelopment revenue bonds in the amount of $45,290,000; general obligation bonds in the amount of $21,445,000; leases in the amount of $3,095,442; and loans in the amount of $12,120,452. (Cert. Admin. R. at 99.) The "CTAR–2" also indicates that the City paid $2,484,950 in interest during 2007 on its long-term indebtedness and that it had short-term liabilities during 2007 in the amount of $11,521,448. (Cert. Admin. R. at 99–101.)

The CTAR–2 Report, however, does not establish that the City exceeded its debt limitation. Indeed, not all of the liabilities listed on that Report count towards the City's debt limitation under Article 13, § 1 of the Indiana Constitution. *See, e.g.*, IND. CODE ANN. §§ 36–7–14–3(b), –25.1(i) (West 2007) (explaining that the $45,290,000 in bonds issued by the City's Redevelopment Commission would not constitute City debt because they are the debt of a special taxing district and payable from the collection of a special benefits tax); IND.CODE ANN. §§ 36–10–3–19, –24(d) (West 2007) (explaining that $18.2 million in general obligation bonds issued by the City's park district would not constitute City debt for the same reason). *See also City of Valparaiso v. Gardner*, 97 Ind. 1, 6 (Ind.1884) (explaining that "[w]hen the *current* revenues are sufficient to fully pay the *current* expenses ... [of] corporate life, there can not be said to be any debt"); *Kees v. Smith*, 235 Ind. 687, 137 N.E.2d 541, 542–43 (1956) (explaining that for purposes of Article 13, § 1 of Indiana's Constitution, a city's lease for property does not give rise to an indebtedness for the aggregate of all the rentals for the entire term.) Thus, the Petitioners have not demonstrated that the DLGF erred in concluding that the City had not exceeded its debt limitation.

The Petitioners have neither shown that the DLGF erred in calculating the City's debt limitation, nor have they shown that the City did indeed exceed its debt limitation. Accordingly, the Petitioners' request for relief as to this issue is denied.

### IV.

### Did the DLGF err in approving the City's budget?

■ Finally, the Petitioners explain that during the taxpayers' objection hearing, they told the DLGF that: 1) there were mathematical errors in the tax levy's computation; 2) the budget did not include the self insurance fund; 3) the budget reported inaccurate revenue and expenditure amounts; 4) City officers failed to use the proper forms when they presented their budget estimates to the City Council; 5) the City's water department, sanitary district, and port authority were not paying

their share of property taxes; 6) the budget contained inaccurate data pertaining to the Admissions and Wagering taxes; and 7) the City's rental registration fees were not reasonable and just. (*See* Petrs' Br. at 30–41.) The Petitioners argue that despite being told about these problems, the DLGF failed to rectify them. (*See* Petrs' Br. at 30–41.) Consequently, the Petitioners request that the Court remand the matter to the DLGF to make the appropriate corrections. (*See* Petrs' Br. at 42.)

■ When this Court reviews a DLGF final determination, it gives it great deference as long as it is supported by substantial evidence. *See, e.g., Clark–Pleasant,* 899 N.E.2d at 765; *Perry v. Indiana Dep't of Local Gov't Fin.,* 892 N.E.2d 1281, 1282–83 (Ind. Tax Ct.2008). The Court will find that a DLGF's final determination is supported by substantial evidence "if a reasonable person could view the record in its entirety and find enough relevant evidence to support the . . . determination." *Amax Inc. v. State Bd. of Tax Comm'rs,* 552 N.E.2d 850, 852 (Ind. Tax Ct.1990).

In reviewing the transcript from, and the evidence presented at, the DLGF hearing, the Court finds that the budget issues of which the Petitioners complain are, like most of the taxpayers' other objections, nothing more than unsupported allegations and conclusions, open-ended questions, or opinions as to how money would be better spent. (*See generally* DLGF Hr'g Tr.; Cert. Admin. R.; Supp'l Cert. Admin. R.; Pet. Ex. 2 at 5–16.) Accordingly, the Court cannot say that the DLGF erred when it "failed to rectify" the alleged problems: unsupported allegations, conclusory statements, open-ended questions, and opinions do not constitute the probative evidence necessary to demonstrate to the DLGF that the City's budget, tax levy, or tax rate violated the law. *See, e.g., Knox County Prop. Tax Assessment Bd. of Appeals v. Grandview Care, Inc.,* 826 N.E.2d 177, 184–85 (Ind. Tax Ct.2005).[11] The Petitioners' request for relief as to this issue is therefore denied.

## CONCLUSION

The Court AFFIRMS the DLGF's final determination in its entirety.

### Court Exhibit A

| COURT'S CATEGORIZATION | | TAXPAYERS' OBJECTION NO. |
|---|---|---|
| 1 | THE CITY'S PROPOSED TAX RATES/LEVIES EXCEED STATUTORY LIMITS SET FORTH IN IC 6–1.1–18 | 1 |
| 2 | THE CITY'S DEBT EXCEEDS LIMITS SET FORTH IN ARTICLE 13, § 1 OF INDIANA CONSTITUTION AND IC 36–1–15 | 2 |
| 3 | THE CITY'S BUDGET FAILS TO INCLUDE: | |
| | *The Self–Insurance Fund | 3 |
| | *City contracts | 5 |

---

11. The Petitioners believed that they did not bear the burden of producing evidence to support the taxpayers' objections. (*See* Petrs' Reply Br. at 22.) (*See also* Oral Argument Tr. at 15.) Instead, they believed that it was the DLGF's burden to gather evidence on their behalf. (*See* Petrs' Br. at 39–40.) The Petitioners were incorrect.

| COURT'S CATEGORIZATION | | TAXPAYERS' OBJECTION NO. |
|---|---|---|
| | *Revenue and expenditure estimates for 25 departments | 13 |
| | *Revenue and expenditures associated with the Hammond Festival of Lakes | 14 |
| | *Debt service for all departments | 28 |
| | *Admissions Tax revenue | 38 |
| | *State property tax replacement credit revenue | 39 |
| | *State homestead credit revenue | 40 |
| | *Property taxes collected from Water Department and Sanitary District | 52–53 |
| | *Funding for City Redevelopment | 55 |
| | *Funding for Planning and Development department | 56 |
| | *Revenue of, and expenditures for, Lost Marsh golf course | 59 |
| 4 | THE FOLLOWING EXPENSES SHOULD BE ELIMINATED FROM THE CITY'S BUDGET: | |
| | *Salary for Mayor's photographer | 4 |
| | *Salaries for six City employees who held "dual positions" | 6 |
| | *Funding for the City golf course clubhouse | 11 |
| | *Raises for City employees | 15 |
| | *Salaries for six of the twelve positions within Controller's office | 16 |
| | *Salary for one of the two staff accountants within Clerk's office | 17 |
| | *Salaries for three of the fourteen clerks within Clerk's office | 18 |
| | *Promotion pay | 19 |
| | *Salary for one of the two clerks for Common Council | 20 |
| | *Salaries for all non-essential City consultants | 21 |
| | *Salary for street light engineer within Engineering/City Hall Maintenance Department | 26 |
| | *Salaries for the two housing coordinators within the Human Relations Department | 27 |
| | *All residency bonuses budgeted for police officers | 29 |
| | *All costs associated with non-essential take home vehicles | 44 |
| | *All costs associated with one of City's two legal aid clinics | 45 |
| | *All costs associated with United Neighborhoods, Inc. | 47 |
| | *Costs for crossing guards | 48 |
| | *Reduce Mayor's salary from 95k to 50k because he works at Purdue every Friday | 49 |
| | *Salary for one of Mayor's two secretaries | 50 |
| | *Costs associated with production of Mayor's television show | 51 |
| 5 | INFORMATIONAL REQUESTS OF DLGF: | |
| | *When City Council passes resolution regarding financial matters, how many votes are required? Is an ordinance required? | 7 |

| COURT'S CATEGORIZATION | | TAXPAYERS' OBJECTION NO. |
|---|---|---|
| | *What can Wagering/Admissions Tax revenue be used for? Property tax relief? | 8, 9 |
| | *With respect to the Board of Works budget, what is included in "insurance," "utilities," and "election" expenses? | 22–25 |
| | *What are "payments in lieu of taxes?" Are all entities paying the proper amount of taxes? | 30 |
| | *Did Motor Vehicle Highway Department's budget request to hire new employee actually list the correct number of employees? | 31 |
| | *Under Gaming Revenue, what are "debt services-administration" and "services and charges–administration?" | 34–35 |
| | *What are "penalties," "fuel costs," and "automobile expenditures" and their appropriate itemizations? | 41–43 |
| | *Why is budget's revenue $82 million less than what is reported in State Board of Accounts' financial statement? | 46 |
| | *Is the property of the Port Authority properly assessed? Is the Port Authority paying its fair share of taxes? | 57 |
| | *Can Port Authority lease city golf course legally? Is that golf course properly assessed? | 58–59 |
| 6 | OTHER RECOMMENDATIONS FOR/ REQUESTS OF DLGF: | |
| | *Suspend collection of City fees until City calculates them pursuant to state statutes | 10 |
| | *Compel department heads to provide the detail for their budget estimates on "Budget Form 1" | 12 |
| | *Determine the proper amount of gaming revenue that should be listed in budget | 32 |
| | *Change budget so that "gaming revenue" reads "admissions tax and wagering tax" | 33 |
| | *Reduce Gaming Revenue's "debt service" and "services/charges" to zero and use those amounts for property tax relief | 36 |
| | *Reconcile gaming revenue and expenditures | 37 |

## ORDER FOR PUBLICATION

Respondent, Indiana Department of State Revenue, by counsel, files its Motion for Publication of Memorandum Decision. The Court, being duly advised in the premises, now finds the motion should be GRANTED.

IT IS THEREFORE ORDERED as follows:

1. Respondent's "Motion for Publication of Memorandum Decision" is hereby granted and the decision handed down in the case of *Dale J. Scopelite and James T. Sheehan v. Ind. Dep't of Local Government Finance*, 49T10–0812–TA–71 (Ind. Tax Ct. October 28, 2010) marked "Not

For Publication," is now ordered to be published.