

I N T H E

# Court of Appeals of Indiana

Exploration Center I, LLC, et al,,

*Appellant-Defendant*

v.

Metropolitan Development Commission of Marion County, Indiana,

*Appellee-Plaintiff*



**FILED**

Apr 17 2026, 8:40 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

April 17, 2026

Court of Appeals Case No.
25A-PL-977

Appeal from the Marion Superior Court

The Honorable Timothy Wayne Oakes, Judge

Trial Court Cause No.
49D02-2409-PL-42928

---

**Opinion by Judge Altice**
Judges May and Foley concur.

**Altice, Judge.**

## Case Summary

Exploration Center I, LLC and Republic Airways Holdings, Inc. (together Republic) applied for and received a seven-year real property tax abatement deduction in Marion County. The Metropolitan Development Commission of Marion County, Indiana (the Commission) subsequently adopted a resolution terminating the tax abatement, and Republic appealed by filing, pursuant to statute, a petition for review in the trial court. The Commission filed a motion to dismiss for Republic's failure to comply with a provision in the relevant statute requiring that the appeal "shall be heard and decided within thirty days," and the trial court granted the motion. Finding that the statute's "shall" language is directory rather than mandatory, we reverse.

We reverse.

## Facts and Procedural History

Under the Indiana Code, cities may designate certain property as economic revitalization areas (ERA) and offer property tax deductions to encourage private redevelopment. *See* Ind. Code Chap. 6-1.1-12.1. Republic proposed building a 40,144 square-foot facility at a location near Indianapolis International Airport (the subject property) and applied for the subject property to be designated as an ERA. The Commission subsequently adopted, on August 19, 2015, a resolution (the 2015 Resolution), which established the subject property as an ERA and approved a real property tax abatement for Republic for a period of seven years. In conjunction with that, and on the same

day, Republic and the City of Indianapolis (the City) entered into a Memorandum of Agreement (MOA), outlining Republic's proposed project and commitments, including capital expenditures, creation and retention of certain jobs, average wage rates, and annual reporting.

[4] As relevant here, the MOA authorized the City to terminate property tax abatement deductions if Republic (1) did not "substantially comply with all of the Commitments" or (2) "cease[d] operations at the facility for which the tax abatement was granted" or "announce[d] the cessation of operations at such facility." *Appendix* at 36, 38. The MOA further provided that, in the event of substantial noncompliance, the City could recoup a portion of that year's tax deduction, in an amount commensurate with Republic's level of noncompliance; if Republic ceased operations altogether, the City would be entitled to claw back all the abatement deductions received under the 2015 Resolution.

[5] In June 2024, the City through the Department of Metropolitan Development (DMD) sent a notice of noncompliance to Republic on the basis that Republic "had ceased operations at the facility . . . and relocated to Carmel, Indiana." *Id*. at 42. A public hearing was held in August 2024 at which the Commission considered evidence and testimony regarding whether the abatement deduction should be terminated and damages paid to the City. Republic maintained that it had materially complied with its commitments.

On August 21, 2024, the Commission issued a resolution (the Final Resolution) adopting the DMD's preliminary finding that Republic's abatement deduction should be terminated. The Final Resolution provided in part:

> WHEREAS the [2015] Resolution directed the [DMD] to survey [Republic]'s Project annually and the Commission reserved its rights to reduce the dollar amount, or rescind in its entirety, the Abatement being received . . . for failure to achieve the benefits described in the Statement of Benefits and/or the MOA or for failure to respond to the mandatory survey; and

> WHEREAS, [Republic] has indicated they will cease operations at the Subject Real Estate;

> * * *

> 1. The Commission hereby confirms DMD's preliminary finding that [Republic] has not substantially complied with the Statement of Benefits contained in the Resolutions or met the Commitments contained in the MOA.

> * * *

> 3. The Commission hereby acknowledges [] [Republic]'s agreement and consent to the termination of the tax abatement and repayment of damages, as authorized by this Final Resolution.

> * * *

5. The Commission hereby directs that [Republic] shall pay to the City of Indianapolis damages in the amount of $247,522.17,[1] within 60 days of the adoption of this Final Resolution and authorizes the Director of the [DMD] to take such action as is necessary to recover said damages should they not be timely remitted. Upon repayment of said damages, the Commission shall release [Republic] from any and all other liabilities related to the Abatement or the termination of the Abatement.

*Id.* at 76-77.

On September 20, 2024, Republic appealed the Final Resolution by filing a Verified Petition for Review (the Petition) pursuant to I.C. § 6-1.1-12.1-5.9(e) (the Statute), which provides, in part, that a property owner whose abatement deduction is terminated may appeal by filing a complaint in the trial court along with a bond. Relevant here, the Statute further states:

An appeal under this subsection **shall be promptly heard** by the court without a jury **and determined within thirty (30) days** after the time of the filing of the appeal.

I.C. § 6-1.1-12.1-5.9(e) (emphases added).

The Petition alleged that the Commission's determination that Republic ceased operations was "wholly unsupported" because, at the hearing, Republic had reported that it had moved its pilot and flight attendant training to a newly-

---

[1] The $247,522.17 represented the entire tax savings that Republic had received under the agreed tax abatement.

constructed facility in Carmel in March 2023, but had continued to operate an emergency backup recovery center at the subject property along with other training events.[2] *Appendix* at 15, 20. Republic thus argued that the Commission erred by concluding that Republic owed the entire amount of tax savings received due to the abatement deduction.

[9] On November 13, 2024, the Commission filed a motion to dismiss, which asserted that the Petition should be dismissed due to Republic's failure to submit a copy of the administrative record to the trial court within thirty days as required by the Administrative Orders and Procedures Act (AOPA). The Commission argued that, pursuant to AOPA provisions, the trial court lacked jurisdiction. *Id.* at 88. Republic responded that AOPA had been amended effective July 2024 such that the agency, not the petitioner, was required to file the record with the trial court. Republic thus asked the trial court to deny the motion to dismiss and to order the Commission to transmit the record within thirty days.

[10] The Commission filed a reply, now asserting that AOPA was inapplicable because it applied only to state agencies and that the Commission, as an entity created by and operating under the City and Marion County, was a political subdivision and expressly excluded from AOPA. The Commission argued that

[2] In the Petition, Republic also challenged statements in the Final Resolution indicating that Republic had agreed that it was not in compliance with its commitments, asserting that Republic "does not agree and never has" that it failed to substantially comply with the MOA and 2015 Resolution. *Appendix* at 16 n.2.

Republic's failure to provide the administrative record to the trial court nevertheless remained a "fatal flaw" and should result in dismissal. *Id.* at 102.

[11] The trial court held a hearing on December 16, 2024,[3] and thereafter ordered the parties to submit supplemental briefing. A second hearing was held on January 3, 2025, and by that point, the parties agreed that the Commission was a political subdivision and that AOPA did not apply. The Commission argued that it was Republic's burden as the petitioner seeking review under the Statute to satisfy the Statute's thirty-day requirement for the trial court to hear and rule on the appeal, and because Republic had done nothing to "effectuate their administrative appeal hearing," such as requesting a hearing or the administrative record, the Petition should be dismissed. *Transcript* at 6; *see also id.* at 12.

[12] Republic, in turn, maintained that the Statute contained only two procedural requirements to appeal – file a petition for review and a bond – and that it had done both and fully complied with the Statute. Republic further pointed out that the Statute does not state that if the appeal is not heard within thirty days it must be dismissed and argued that if the Legislature had meant for that extreme remedy, it would have so provided. Republic maintained that it would be "a violation of due process to make that leap" where the Statute does not require dismissal as a consequence for being outside of the thirty days. *Id.* at 16.

---

[3] The hearing was not recorded.

[13] The court took the matter under advisement, and Republic submitted a proposed order denying the Commission's motion to dismiss. On March 24, 2025, the trial court stamped "Denied" on the proposed order, and the CCS entry on that date stated, "Order Denying Motion to Dismiss." *Appendix* at 6, 8. Believing that the trial court had denied the Commission's motion, Republic filed a motion to clarify and an amended proposed order that directed the Commission to transmit the administrative record to the trial court. On March 28, the trial court stamped "Denied" on that amended proposed order and provided the following typed explanation: "Petitioner's Order on Motion to Dismiss was DENIED: meaning, the Motion to Dismiss was GRANTED. Respondent never sent a Proposed Order. The nuances of Odyssey admittedly can result in uncertainty." *Id*. at 9. Republic now appeals.

## Discussion & Decision

## 1. Appellate Jurisdiction

[14] As a threshold matter, we address the Commission's contention that Republic's appeal to this court was "premature" and should be dismissed for lack of appellate jurisdiction. *Appellee's Brief* at 8. Jurisdiction is a question of law we review de novo. *Speedway, LLC v. Shedd*, 272 N.E.3d 235, 237 (Ind. Ct. App. 2025).

[15] Ind. Appellate Rule 2(H)(1) provides, as relevant here, that "[a] judgment is a final judgment if [] it disposes of all claims as to all parties." That is, a judgment is final when it "end[s] the particular case and leaves nothing for future

determination." *State v. B.H.*, 260 N.E.3d 953, 957 (Ind. 2025). The Commission asserts that the trial court's denial of Republic's proposed order did not constitute a final judgment and that Republic needed to wait for the trial court "to issue a final judgment affirmatively granting the Motion to Dismiss." *Appellee's Brief* at 8.

[16] While the situation created by the first "Denied" proposed order and the accompanying CCS entry was admittedly confusing, the trial court later clarified its ruling, expressly stating on the second proposed order that "the Motion to Dismiss was GRANTED." *Appendix* at 9. We agree with Republic that the dismissal order "left nothing more for future determination between the parties." *Reply Brief* at 8; *see B.H.*, 260 N.E.3d at 957 (stating that trial court's rejection of the State's juvenile delinquency petition, though subject to challenge through a motion to correct error, "left nothing more to decide and was therefore final").

[17] As to the Commission's suggestion that the trial court's dismissal ruling was not a final judgment because the bond posted by Republic had not been released, we are unpersuaded. Rather, we agree with Republic that "the disbursement of funds on deposit on appeal . . . is a separate procedural matter that does not impact whether the requirements of [App. R.] 2(H) are met." *Reply Brief* at 7. Concluding that we have jurisdiction, we turn to the merits of the appeal.

## 2. Dismissal of Republic's Petition

### Standard of Review

[18] The Commission's motion to dismiss ultimately sought dismissal of the Petition "for procedural failures," namely Republic's failure to take action to comply with the Statute's requirement that "[a]n appeal . . . shall be promptly heard by the court . . . and determined within thirty days[.]"[4] *Appendix* at 85, 97; I.C. § 6-1.1-12.1-5.9(e). Where, as here, the trial court's decision was based on interpretation of a statute, we review the decision de novo as a question of law. *See Ehrlich v. Moss Creek Solar, LLC*, 219 N.E.3d 760, 765 (Ind. Ct. App. 2023) (determining, following a petition for judicial review, whether statutory definition of an "economic revitalization area" included certain farmland), *trans. denied*.

---

[4] As stated, the Commission initially moved for dismissal based on Republic's failure to file the administrative record within thirty days as required under AOPA, resulting in an alleged lack of jurisdiction or a failure to state a claim, but the parties later agreed that AOPA did not apply. Further, at the second hearing on the matter, the Commission clarified that while "our initial motion did focus on AOPA . . . we have modified our motion," and:

> [W]e're not arguing about the filing of the administrative record. . . . [Section] 5.9(e) required that there be a hearing within 30 days of their petition. And [Republic] did nothing to effectuate that. . . . [T]he certified administrative record is just an example . . . of something they could have done that [] would have helped to effectuate that hearing . . . So we're not arguing that there was a requirement [to file the record] that they've [] blown. . . . [T]hey were required to have a hearing within 30 days, and they did nothing to effectuate that.

*Transcript* at 12.

### The Statute

The parties agree that judicial review of the Final Resolution is governed by the Statute, which provides:

> A property owner whose deduction is terminated . . . under this section may appeal the . . . decision by filing a complaint in the office of the clerk of the circuit or superior court together with a bond conditioned to pay the costs of the appeal if the appeal is determined against the property owner. **An appeal under this subsection shall be promptly heard by the court without a jury and determined within thirty (30) days after the time of the filing of the appeal.** The court shall hear evidence on the appeal and may confirm the action of the designating body or sustain the appeal. The judgment of the court is final and conclusive unless an appeal is taken as in other civil actions.

I.C. § 6-1.1-12.1-5.9(e) (emphasis added).

Our initial inquiry is whether the statutory language is clear and unambiguous on its face. *Town of Bristol v. Cappelletti*, 908 N.E.2d 1203, 1204 (Ind. Ct. App. 2009). If so, we interpret the statute consistent with its plain meaning, by giving effect to both what it says and does not say. *Mishler v. Union-N. United Sch. Corp.*, 236 N.E.3d 1142, 1146 (Ind. Ct. App. 2024). "Our goal when interpreting a statute is to give effect to the legislature's intent, and the best evidence of that intent is the language of the statute itself." *Ehrlich*, 219 N.E.3d at 765. The question before us, and one not yet answered by our courts, is

whether the Statute's provision stating that the matter "shall be promptly heard . . . and determined within thirty days" is mandatory.[5] I.C. § 6-1.1-12.1-5.9(e).

[21] Our legislature typically uses the word "shall" to express a mandate. *Mishler*, 236 N.E.3d at 1146. However, "shall" may be construed as directory instead of mandatory "to prevent the defeat of the legislative intent." *Paul Terrault & Gary Cmty. Sch. Corp. v. Scheere*, 200 N.E.3d 490, 496-97 (Ind. Ct. App. 2022) (quoting *Hancock Cnty. Rural Elec. Membership Corp. v. City of Greenfield*, 494 N.E.2d 1294, 1295 (Ind. Ct. App. 1986), *trans. denied*). More specifically, we have construed "shall" as directory when the statute fails to specify adverse consequences, the provision does not go to the essence of the statutory purpose, and a mandatory construction would thwart the legislative purpose. *Wilson v. Wilkening*, 175 N.E.3d 1169, 1174 (Ind. Ct. App. 2021); *Scopelite v. Indiana Dep't of Local Gov't Fin.*, 939 N.E.2d 1138, 1142-43 (Ind. T.C. 2010); *see May v. Dep't of Nat. Res., State of Ind.,* 565 N.E.2d 367, 371 (Ind. Ct. App. 1991) ("The term 'shall' has often been held to be [] directory . . . when the statute fails to specify adverse consequences (as here).").

---

[5] We observe that other sections of Chap. 12.1 – Deduction for Rehabilitation or Redevelopment of Real Property in Economic Revitalization Areas – contain a similar provision requiring a hearing and determination in a specified number of days. *See* I.C. §§ 6-1.1-12.1-2.5 ("All remonstrances upon which an appeal has been taken shall be consolidated and heard and determined within thirty (30) days after the time of the filing of the appeal."); -12 ("An appeal under this subsection shall be promptly heard by the court without a jury and determined not more than thirty (30) days after the time of the filing of the appeal."). We, nor the parties, have found any cases under those sections addressing a failure to hold a hearing in the thirty-day timeline.

[22] Several cases interpreting statutory provisions similar to that before us – stating a timeline for a decision – particularly inform our decision today. In *Hancock Cnty.*, this court addressed whether the word "shall" in a statute providing that the Public Service Commission shall rule on a petition within ninety days of its filing was mandatory or directory. In concluding that the "shall rule within ninety days" language was directory, the *Hancock Cnty.* court observed that the statute "neither purports to restrain the Commission from acting on the petition after ninety days nor specifies that adverse or invalidating consequences follow." 494 N.E.2d at 1296. It determined that, while the language indicated that the matter should be acted upon promptly and expeditiously, "the provision [did] not go to the essence of the statutory purpose" and that a mandatory construction would frustrate the legislature's purpose for the Commission to determine which utility could better serve the interests of the consumers. *Id.*

[23] More recently, in *Wilson*, this court examined a provision in the Indiana Fair Housing Act (IFHA) stating that the Indiana Civil Rights Commission (the ICRC) "shall make a determination" as to whether a discriminatory housing practice has occurred "not later than one hundred days after the date a complaint is filed." Ind. Code § 22-9.5-6-8(b). After the trial court granted the landlord's motion for judgment on the evidence because the ICRC issued its determination more than 100 days after the complaint was filed, the ICRC appealed and asserted that the trial court had misinterpreted the "shall" as being mandatory, and we agreed. 175 N.E.3d at 1174-75.

In so doing, the *Wilson* court observed that "the statute neither specifies any express or implied adverse consequences for the [ICRC]'s failure to comply with the 100-day notice provision nor contains language indicating that the 100-day deadline was intended to be jurisdictional." *Id*. at 1175. And it noted that compliance with the 100-day provision "does not go to the essence of the statute's purpose[s]" to provide for fair housing practices in Indiana, create a procedure for investigating complaints, and provide rights and remedies. *Id*. The *Wilson* court concluded that a mandatory construction of the word "shall" would thwart the legislative purpose of the statute "by requiring the dismissal of potentially valid IFHA cases based simply on the [ICRC]'s delay" and "[t]his would be an absurd and unjust result, which would be patently inconsistent with the intent of the IFHA." *Id*.

Lastly, in *Scopelite*, our tax court had occasion to examine a provision in Ind. Code § 6-1.1-17-16, stating that the Department of Local Government Finance (DLGF) "is expressly directed to" hold a public hearing "not later than February 15 of each year." The tax court determined that the February 15 deadline was directory, not mandatory. In reaching that conclusion, the tax court observed that, although the "is expressly directed to" language connotes a mandatory import, the statute does not specify any adverse consequences in the event the DLGF fails to complete its duties by February 15, and "[s]uch silence leads the Court to conclude that the legislature's purpose behind the specified date is simply to keep the budget process 'moving along' and, ultimately, to

ensure that the DLGF has final review on both budgets and taxpayer objections thereto." 939 N.E.2d at 1143.

[26] Turning to the case at hand, we first observe that the Statute sets forth no adverse consequences if the matter is not heard and decided in thirty days. Nor is the thirty-day timeline jurisdictional in nature. The essence of I.C. § 6-1.1-12.1-5.9 (Section 5.9), where the Statute is placed, is to provide the designating body, here the City or the Commission, with the ability to determine compliance with the agreed-to tax abatement terms and, if warranted, terminate the deduction, and to provide the affected property owner the ability to appeal that decision to the trial court. In a yet broader view, I.C. Chap. 6-1.1-12.1 provides procedures for identification of areas in need of economic rehabilitation or revitalization and allows tax incentives to encourage private development therein. *See e.g.*, *Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs*, 629 N.E.2d 959, 962 (Ind. T.C. 1994): ("The purpose of the ERA deduction is to encourage equipment installation and new employment opportunities in an area suffering from economic decline."). The thirty-day provision at issue, although indicating that an appeal should move promptly, does not go to the essence of the purpose of the Statute, Section 5.9, or to Chap. 12.1 pertaining ERA tax deductions. *See Wilson*, 175 N.E.3d at 1173 (where the court considered the broader purposes of the IFHA when determining the import of "shall" language in one section calling for a determination in 100 days). As in *Wilson*, we conclude that a mandatory construction of the word "shall" in the Statute would thwart the legislative purpose of the Statute, lead to

an unjust result, and be inconsistent with the intent of the ERA sections as a whole.

[27] In sum, we find that the Statute's language that the appeal "shall be" heard and decided within thirty days was to "keep the [appeal process] moving along" and indicated that the matter should be acted upon "promptly and expeditiously" but was not meant as mandatory language that would result in dismissal of the petitioner's appeal.[6] *Hancock Cnty.*, 494 N.E.2d 1294 at 1296; *Scopelite*, 939 N.E.2d at 1143. Accordingly, we reverse the trial court's grant of the Commission's motion to dismiss and remand for further proceedings.

[28] Judgment reversed.

May, J. and Foley, J., concur.

---

[6] We acknowledge the Commission's point that, here, Republic sought judicial review pursuant to the Statute but "did nothing" to effectuate having a hearing in thirty days. *Appellee's Brief* at 8. That is, Republic did not request a hearing either in the Petition or by separate motion and did not request the record, ask the Commission to obtain it, or otherwise advise the court of the status of such. Although we conclude the Statute's timeline was directory in nature, the language clearly reflects an intent that the appeal not languish in the trial court; for continued inaction, the Commission was not entirely without recourse, as Ind. Trial Rule 41(E) would provide an available avenue under which to seek relief.

ATTORNEYS FOR APPELLANTS

Stephen M. Judge
Vienna M. Bottomley
South Bend, Indiana


ATTORNEYS FOR APPELLEE

Jess Reagan Gastineau
Michael Brian Coppinger
Indianapolis, Indiana