ATTORNEY FOR PETITIONER:
**C. GREGORY FIFER**
APPLEGATE FIFER PULLIAM LLC
Jeffersonville, IN

ATTORNEYS FOR RESPONDENT:
**GREGORY F. ZOELLER**
ATTORNEY GENERAL OF INDIANA
**JESSICA E. REAGAN**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

**FILED**
Apr 24 2015, 10:53 am

CLERK
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF CLARK COUNTY, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Cause No. 49T10-1111-TA-68 |
| INDIANA DEPARTMENT OF LOCAL GOVERNMENT FINANCE, | ) ) ) | |
| Respondent. | ) ) | |

### ON APPEAL FROM A FINAL DETERMINATION OF
### THE DEPARTMENT OF LOCAL GOVERNMENT FINANCE

**FOR PUBLICATION**
**April 24, 2015**

WENTWORTH, J.

This case concerns whether the Indiana Department of Local Government Finance (DLGF) erred in denying the Clark County Board of Commissioners' (Board) request to increase Clark County's Cumulative Capital Development Fund (CCDF) tax rate for the 2012 budget year. The Court finds no error.

## BACKGROUND

Prior to July 11, 2011, the Board contracted with H.J. Umbaugh & Associates for

the preparation of a Comprehensive Financial Plan (Umbaugh Plan) to assist its commissioners in fulfilling "their role as [the] managers of [Clark] County." (See Cert. Admin. R. at 186-87.) The Umbaugh Plan recommended that the Board increase the CCDF tax rate to the maximum allowed by statute. (See Cert. Admin. R. at 190.) The Umbaugh Plan indicated that the rate increase would generate about $613,800 in additional property tax revenues that, once transferred to the County's Rainy Day Fund, could be used to pay certain operating expenses. (See Cert. Admin. R. at 190.)

On July 21, 2011, the Board introduced Ordinance No. 18-2011 for approval and adoption at its regularly scheduled monthly meeting. (See Cert. Admin. R. at 5-6, 135-36.) Ordinance No. 18-2011 provided in part

> **WHEREAS,** Ind. Code § 36-9-14.5, et seq., and Ind. Code § 6-1.1-41, et seq., authorize this Board to establish a cumulative capital development fund for any purpose for which property taxes may be imposed within the county under the authority of the series of statutes referenced in Ind. Code § 36-9-14.5-2; and,
>
> **WHEREAS,** this Board has previously established the [CCDF] by ordinance, and such fund has been in continuous existence for more than one (1) year; and,
>
> **WHEREAS,** the [CCDF] is presently funded by a tax rate of $0.0180 per $100 of assessed valuation pursuant to the 2011 budget approved by the [Council] and in accordance with the provisions of Ind. Code § 36-9-14.5-6(a); and,
>
> **WHEREAS,** Ind. Code § 36-9-14.5-6(b) authorizes the tax rate of a cumulative capital development fund that has been in existence for a period of one (1) or more years to be established at a rate of up to $0.0333 per $100 of assessed valuation; and,
>
> **WHEREAS,** Ind. Code § 36-1-8-5(b)(1) permits funds held in the [CCDF] to [be] transferred to the Clark County Rainy Day Fund to the extent not expended during any budget year; and,
>
> **WHEREAS,** this Board now finds that an increase of the tax rate funding the [CCDF] is an appropriate action given the budget crisis

2

that Clark County government presently faces in that it will create a mechanism by which the County's reserve funds might be replenished once the essential functions of County government are again fully funded[.]

(Cert. Admin. R. at 10-11.) During the meeting, however, the Board failed to adopt Ordinance No. 18-2011 with a unanimous vote as required under Indiana Code § 36-2-4-7(b); consequently, the Board scheduled a special meeting for the following week. (See Cert. Admin. R. at 5-6.) On July 27, 2011, at that special meeting, the Board unanimously adopted Ordinance No. 18-2011.[1] (See Cert. Admin. R. at 6-7.)

On July 28, 2011, the Board petitioned the DLGF for approval of its proposed tax rate increase, but shortly thereafter, over 100 taxpayers filed an objection petition with the Clark County Auditor. (See Cert. Admin. R. at 1, 20-29). On September 26, 2011, the DLGF held a hearing during which some of those taxpayers advocated against the tax rate increase stating that they believed certain county officials were fiscally irresponsible and had previously spent CCDF monies improperly. (See, e.g., Cert. Admin. R. at 168-69; Cert. Supp'l Admin. R. at 7-12, 15-29, 36-38.) To support their position, the taxpayers presented, among other things, excerpts from the State Board of Accounts' 2008 and 2009 Audit Reports, which indicated that the Board made over $400,000 of unauthorized disbursements from the CCDF for items such as utilities, insurance, animal control supplies, and studies.[2] (See Cert. Admin. R. at 129-30.)

The Board's president, on the other hand, asked the DLGF to approve the

---

[1] The commissioner that voted against adopting Ordinance No. 18-2011 during the Board's first meeting did not attend the special meeting. (See Cert. Admin. R. at 6-7, 162-64.)

[2] The Audit Reports stated that the disbursements were unauthorized because the Board failed to obtain an appropriation from the Clark County Council as required under Indiana Code § 36-2-5-2(b) and because Ordinance No. 6-2004 that established the CCDF did not authorize any of the disbursements. (See Cert. Admin. R. at 129.)

3

requested tax rate increase, explaining that the County's dire financial situation had necessitated the request. (See, e.g., Cert. Admin. R. at 10-11.) The president explained that the Board planned to use the additional property tax revenues generated by the rate increase to defray both employee health insurance costs and emergency costs (e.g., shoring up salt reserves for unanticipated blizzards). (See Cert. Supp'l Admin. R. at 30-32.) The president testified that the Board planned to put about $400,000 of the newly generated revenue into either the County's Insurance Fund or Rainy Day Fund to cover those costs. (See Cert. Supp'l Admin. R. at 31-32.)

On October 7, 2011, the DLGF issued its final determination denying the Board's request to increase the CCDF tax rate. (See Cert. Admin. R. at 233-37.) The DLGF explained that it could not approve the Board's request because the Umbaugh Plan, Ordinance No. 18-2011, and its president's testimony all indicated that the Board sought to increase the CCDF tax rate for a purpose not expressly authorized under Indiana Code § 6-1.1-41 and Indiana Code § 36-9-14.5-2. (See Cert. Admin. R. at 236.)

On November 21, 2011, the Board initiated this original tax appeal. The Court heard oral argument on August 16, 2012. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn a final determination of the DLGF bears the burden of demonstrating that it is invalid. See Brown v. Dep't of Local Gov't Fin., 989 N.E.2d 386, 388 (Ind. Tax Ct. 2013). Accordingly, the Board must demonstrate to the Court that the DLGF's final determination is contrary to law, arbitrary, capricious, an abuse of

4

discretion, or unsupported by substantial evidence.[3] See id.

## ANALYSIS

On appeal, the Board contends that the DLGF's final determination must be reversed for two reasons. First, it claims that the DLGF considered matters outside its statutory authority under Indiana Code § 6-1.1-41 et seq. (Chapter 41). Second, the Board claims that the DLGF's finding that the Board sought to increase the CCDF tax rate for an impermissible purpose is contrary to law, arbitrary and capricious, and unsupported by substantial evidence.

## I.

The Board first asserts that the DLGF exceeded its statutory authority by considering the Board's purpose for requesting an increased tax rate for the CCDF. (See Pet'r Br. at 9-10; Oral Arg. Tr. at 10-11, 30-31.) The Board claims that Indiana Code § 6-1.1-41-13 (Section 13) limits the DLGF to considering whether the Board complied with the procedural steps required by Chapter 41. (See Pet'r Br. at 9-11; Oral Arg. Tr. at 11-13, 17.) See also, e.g., IND. CODE § 6-1.1-41-3 (2011) (regarding certain notice and public hearing requirements).

Section 13 states: "[a]fter a political subdivision complies with this chapter [i.e., Chapter 41], a property tax may be levied annually at the tax rate approved under this

---

[3] The Board attached several exhibits to its petition for review, but the administrative record does not indicate that the "Analysis and Recommendations" and the "2012 Council Approved Budget" were submitted to the DLGF during the administrative proceedings. (Compare Pet'r Pet., Exs. B at 9, Ex. G at 1-9 with Cert. Admin. R.) As a result, the Court will not consider these two exhibits or any arguments related to them on appeal. See, e.g., Scopelite v. Dep't of Local Gov't Fin., 939 N.E.2d 1138, 1147 (Ind. Tax Ct. 2010); Clark-Pleasant Cmty. Sch. Corp. v. Dep't of Local Gov't Fin., 899 N.E.2d 762, 768-69 (Ind. Tax Ct. 2008) (explaining that the Court will only consider the evidence contained within the administrative record to determine whether the DLGF's factual findings are supported by substantial evidence and if its legal conclusions are correct).

chapter without further action under this chapter." IND. CODE § 6-1.1-41-13 (2011) (emphasis added). The statute's plain language does not limit compliance to the procedural steps, but directs compliance with the entirety of Chapter 41. See I. C. § 6-1.1-41-13. See also IND. CODE § 6-1.1-41-2(b) (2011) (stating that "[i]f an action described in this section is not adopted or approved in conformity with [Chapter 41], the political subdivision may not levy a tax for the fund in the ensuing year") (emphasis added).

Chapter 41, in turn, states that it "applies to establishing and imposing a tax levy for cumulative funds [authorized] under [several provisions of the Indiana Code including] Indiana Code § 36-9-14.5." See IND. CODE § 6-1.1-41-1(13) (2011). Indiana Code § 36-9-14.5 authorizes the Board, as Clark County's legislative body,[4] to establish a cumulative capital development fund, such as the CCDF, "to provide money for any purpose for which property taxes may be imposed within the [County] under the authority of [several enumerated statutes]." IND. CODE § 36-9-14.5-2 (2011). These enumerated statutes authorize the establishment of cumulative capital development funds for the purposes of acquiring, constructing, repairing, or remodeling, for example: 1) ballot card or electronic voting systems; 2) bridges; 3) airport runways; 4) certain county levees, gates, and pumping stations; 5) channel improvements; 6) certain hospitals; 7) courthouses; 8) county jails or juvenile detention centers; 9) drains; 10) certain buildings and sidewalks; and 11) park and recreation facilities. See IND. CODE § 3-11-6-1 (2011); IND. CODE §§ 8-16-3, -3.1 (2011); IND. CODE § 8-22-3-25 (2011)

---

[4] A "legislative body" is the board of commissioners in a county that is not subject to either Indiana Code § 36-2-3.5 or Indiana Code § 36-3-1. IND. CODE § 36-1-2-9(1) (2011) (amended 2014). Clark County is not subject to either Indiana Code § 36-2-3.5 or Indiana Code § 36-3-1. (See Cert. Admin. R. at 121-22); see also IND. CODE § 36-3-1 (2011) (regarding the government of Indianapolis and Marion County a/k/a Unigov, not the government of Clark County).

(amended 2013); IND. CODE § 14-27-6-48 (2011); IND. CODE § 14-33-14-4 (2011); IND. CODE §§ 16-22-5-3, -8-41 (2011); IND. CODE §§ 36-9-14-2, -15-2 (2011) (amended 2012); IND. CODE §§ 36-9-27-100, -16-2 (2011); IND. CODE § 36-9-16-3 (2011) (amended 2012); IND. CODE § 36-10-3-21 (2011).

Both Chapter 41 and Indiana Code § 36-9-14.5 accordingly require that a cumulative capital development fund and its related tax levy be established for one of the enumerated statutory purposes.  See Joyce Sportswear Co. v. State Bd. of Tax Comm'rs, 684 N.E.2d 1189, 1192 (Ind. Tax Ct. 1997) (providing that when interpreting statutes, the Court looks first to the plain language of the statute), review denied.  Therefore, the DLGF's consideration of the Board's purpose for requesting an increase to the CCDF's tax rate was proper, and the Board has failed to show that the DLGF considered matters outside its statutory authority under Chapter 41.

**II.**

The Board also claims that the DLGF's final determination must be reversed because it is contrary to law, unsupported by substantial evidence, and arbitrary and capricious.  More specifically, the Board maintains that the DLGF's finding that the Board sought to increase the CCDF tax rate for an impermissible purpose is contrary to law because it violated Indiana Code § 36-1-3-7 and Indiana Code § 36-9-14.5-8(c).  The Board also claims that there is no evidence to support that finding.  Finally, the Board contends that the DLGF's finding is arbitrary and capricious because it created a conflict between Indiana Code §§ 36-1-8-5 and 36-1-8-5.1 where none had previously existed.

**A.**

The Board first contends that the DLGF's finding that it sought to increase the CCDF tax rate for an impermissible purpose was in contravention of Indiana Code § 36-1-3-7, which provides that "[s]tate and local agencies may review or regulate the exercise of powers by a unit only to the extent prescribed by statute." IND. CODE § 36-1-3-7 (2011). The Board claims that the DLGF violated Indiana Code § 36-1-3-7 because it "predetermine[d] that the Board [might] expend funds from the [CCDF] in a manner not permitted by Indiana law" despite the fact that Indiana Code § 5-11-1-9 confers that authority on the State Board of Accounts. (See Pet'r Reply Br. at 3 (citing IND. CODE § 5-11-1-9(a) (2011) (requiring the State Board of Accounts to "examine all accounts and all financial affairs of every public office and officer, state office, state institution, and entity")).) This argument, however, is misplaced.

The DLGF's examination of the Board's request to increase the CCDF tax rate is not the same type of examination conducted by the State Board of Accounts under Indiana Code § 5-11-1-9. Indeed, when the State Board of Accounts conducts an examination under Indiana Code § 5-11-1-9, it

> (1) [examines t]he financial condition and resources of each municipality, office, institution, or entity[;]
> (2) [determines w]hether the laws of the state and the uniform compliance guidelines . . . established under [Indiana Code § 5-11-1-24] have been complied with[; and]
> (3) [investigates t]he methods and accuracy of the accounts and reports of the person being examined.

See I.C. § 5-11-1-9(d). Moreover, the State Board of Accounts conducts this examination without providing notice and often after the examinee has already spent the relevant funds. See I.C. § 5-11-1-9(d); see, also e.g., IND. CODE § 5-11-1-25 (2011)

8

(requiring the State Board of Accounts to conduct annual or biennial examinations); (Cert. Supp'l Admin. R. at 19 (explaining that the 2008 and 2009 Audit Reports were not available until September 2011).)

In contrast, the administrative record reveals that the DLGF's "examination" consisted of a consideration of the arguments and evidence presented by the parties at the administrative hearing so that it could rule on the taxpayers' objection to the Board's request as it is both empowered and required to do under Indiana Code § 6-1.1-41-9. Moreover, the DLGF did not predetermine how the Board might expend CCDF funds, but instead was provided evidence and argument from the Board itself on the purpose it had for the increased tax revenue. Accordingly, the Board has not shown that the DLGF's finding violated Indiana Code § 36-1-3-7.

Alternatively, the Board contends that the DLGF's finding contravenes Indiana Code § 36-9-14.5-8(c), which gives the Board the discretion to increase the CCDF tax rate to cover unanticipated emergency expenses. (See Pet'r Br. at 11-13; Pet'r Reply Br. at 2-3; Oral Arg. Tr. at 19-20.) Indiana Code § 36-9-14.5-8(c), in relevant part, provides "[m]oney held in the cumulative capital development fund may be spent for purposes other than the purposes stated in [Indiana Code § 36-9-14.5-2], if the purpose is to protect the public health, welfare, or safety in an emergency situation that demands immediate action[.]" IND. CODE § 36-9-14.5-8(c) (2011). The Board therefore claims that the DLGF's finding is improper because it "deprive[]d the Board of additional funds that would otherwise be available for such permissible uses." (See Pet'r Reply Br. at 2; Oral Arg. Tr. at 74-75.)

Contrary to the Board's contentions, the plain terms of Indiana Code § 36-9-14.5-

9

8(c) do not indicate that new property tax revenues may be generated by establishing a new cumulative capital development fund or by increasing an existing fund's tax rate. Rather, Indiana Code § 36-9-14.5-8(c) indicates that money already in the fund may be expended on emergencies. See I.C. § 36-9-14.5-8(c). See also, e.g., Indiana Dep't of State Revenue v. Horizon Bancorp, 644 N.E.2d 870, 872 (Ind. 1994) (explaining that the plain and obvious meaning of an unambiguous statute may not be enlarged or restricted). Indiana Code § 36-9-14.5-8(c)(1) reinforces this conclusion by providing that "[m]oney may be spent under the authority of [Indiana Code § 36-9-14.5-8(c)] only after the county executive . . . issues a declaration that the public health, welfare, or safety is in immediate danger that requires the expenditure of money in the fund[.]" I.C. § 36-9-14.5-8(c)(1). Indiana Code § 36-9-14.5-8(c), therefore, permits the Board to spend CCDF money already in the fund to defray emergency expenses, but does not allow an increase in the CCDF's tax rate for the sole purpose of using the new tax revenues to pay for subsequent emergency expenses. Accordingly, the Board has not shown that the DLGF's finding is in contravention of Indiana Code § 36-9-14.5-8(c).

**B.**

Next, the Board contends that the DLGF's finding that the Board sought to increase the CCDF's tax rate for an impermissible purpose is unsupported by substantial evidence. The Board explains that while the DLGF based its finding primarily on the testimony of its president, he never indicated, or at least meant to indicate, that the Board sought to increase the CCDF tax rate for an unauthorized purpose. (See Pet'r Br. at 10-11; Pet'r Reply Br. at 1; Oral Arg. Tr. at 22-23.) The Board further explains that even if its president had so testified, it is immaterial because

10

the president cannot bind the Board to any particular course of action without its express authorization. (See Pet'r Reply Br. at 1-2; Oral Arg. Tr. at 22-23.)

The Court will find that a final determination of the DLGF is supported by substantial evidence if it determines that a reasonable person, upon reviewing the administrative record in its entirety, could find enough relevant evidence to support the DLGF's determination. See Brown, 989 N.E.2d at 390. In making that determination, the Court may not reweigh the evidence nor judge the credibility of the witnesses who testified at the DLGF's hearing. See id.

The administrative record reveals that ten taxpayers appeared at the DLGF's hearing and presented documentary and testimonial evidence in opposition to the Board's requested increase to the CCDF tax rate. (See, e.g., Supp'l Cert. Admin. R. at 2, 7-29.) The taxpayers explained that they opposed the request because certain county officials were fiscally irresponsible: they refused to reduce budgets and continued to spend money that they knew the county did not have. (See, e.g., Supp'l Cert. Admin. R. at 7-9.) The taxpayers also presented excerpts from two State Board of Accounts' Audit Reports that purportedly showed that the Board had previously used CCDF funds for unauthorized purposes. (See Cert. Admin. R. at 129-30; Supp'l Cert. Admin. R. at 20.) The taxpayers maintained that the only way to rein in the Board and its spending, was to deny its request to increase the CCDF tax rate. (See, e.g., Supp'l Cert. Admin. R. at 16-21, 36-39.)

In response, the Board's president testified that the Board's decision to increase the CCDF tax rate was based on the Umbaugh Plan's finding that increasing the CCDF tax rate "could generate an additional $613,800 of property taxes" and its suggestion

11

that the "revenues be transferred to the Rainy Day Fund to be used for operating disbursements." (See Supp'l Cert. Admin. R. at 30; Cert. Admin. R. at 190.) The president explained that the County's Insurance Fund was "really, really depleted" and that while the Board had "voted [for $]400,000 of th[e] additional tax [revenue] to go to employee benefits in the form of health insurance premiums" or the Rainy Day Fund for "emergency situations[,]" the Board would most likely put those revenues in the County's Insurance Fund.[5] (See Supp'l Cert. Admin. R. at 30-32.)

Based on this evidence, a reasonable person could conclude that the Board saw an increase to the CCDF's tax rate as a mechanism to raise money to defray the County's insurance and emergency expenses. Indeed, Ordinance No. 18-2011 even states that given the County's budget crisis, an increase to the CCDF tax rate "will create a mechanism by which the County's reserve funds might be replenished once the essential functions of County government are again fully funded[.]" (See Cert. Admin. R. at 11.) Neither Indiana Code § 6-1.1-41 nor Indiana Code § 36-9-14.5-2 authorize an increase to the CCDF tax rate for either of these purposes. See supra pp. 6-7. Accordingly, the Board has not shown that the DLGF's finding is unsupported by substantial evidence.

### C.

Finally, the Board contends that the DLGF's finding that it sought to increase the CCDF tax rate for an impermissible purpose is arbitrary and capricious because it created a conflict between Indiana Code §§ 36-1-8-5 and 36-1-8-5.1 where none had previously existed. (See Pet'r Br. at 2-3.) During the 2012 budget year, Indiana Code §

---

[5] In addition to the president, the Board's attorney explained at the hearing why the Board had not violated Indiana's Open Door Law. (See Supp'l Cert. Admin. R. at 2, 32-35.)

36-1-8-5, in relevant part, provided

> Whenever the purposes of a tax levy have been fulfilled and an unused and unencumbered balance remains in the fund, the fiscal body of the political subdivision shall order the balance of that fund to be transferred as follows, unless a statute provides that it be transferred otherwise: (1) Funds of a county, to the general fund or rainy day fund of the county, as provided in [Indiana Code § 36-1-8-5.1].

IND. CODE § 36-1-8-5(b)(1) (2011). Indiana Code § 36-1-8-5.1(d) stated that "[i]n any fiscal year, a political subdivision may transfer under [Indiana Code § 36-1-8-5] not more than than ten percent (10%) of the political subdivision's total annual budget for that fiscal year, adopted under IC 6-1.1-17, to the rainy day fund." IND. CODE § 36-1-8-5.1(d) (2011) (amended 2013). The Board claims that the DLGF's finding created a conflict between Indiana Code §§ 36-1-8-5 and 36-1-8-5.1 because it effectively altered their requirements by conditioning the Board's ability to use this budgetary tool on obtaining the DLGF's pre-approval. (See Pet'r Reply Br. at 2-3.)

A DLGF final determination is arbitrary and capricious if it is "'patently unreasonable' and is made 'without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion.'" Board of Comm'rs of Cnty. of Jasper v. Vincent, 988 N.E.2d 1280, 1281 (Ind. Tax Ct. 2013) (citation omitted). In this case, the Board has not shown that the DLGF's finding created a conflict between Indiana Code §§ 36-1-8-5 and 36-1-8-5.1 by requiring that the Board obtain the DLGF's pre-approval before it transfers CCDF monies to the County's Rainy Day Fund. As already explained, the DLGF simply determined that Indiana Code § 6-1.1-41 and Indiana Code § 36-9-14.5 did not permit an increase to the CCDF's tax rate solely for the purpose of generating new revenues

13

for the County's Rainy Day or Insurance Funds.[6]  Accordingly, the Board has not shown that the DLGF's finding is arbitrary and capricious on this basis.

## CONCLUSION

For all of the above-stated reasons, the Court AFFIRMS the final determination of the DLGF.

---

[6] The Board has also claimed that the DLGF's finding was improper because it substituted its judgment for that of the Board.  (See Pet'r Reply Br. at 2-3.)  The DLGF, however, did not substitute its judgment for that of the Board because it made no pronouncement about the prudence of the the Board's request and it did not dictate how the Board should spend monies already in the CCDF.  See generally Murray v. Zook, 187 N.E. 890 (Ind. 1933) (illustrating when one entity improperly supplants its judgment for that of another).  Instead, the DLGF's finding merely explained that it must deny the Board's request because the evidence indicated that the Board wanted to increase the CCDF's tax rate for a reason not expressly authorized under either Indiana Code § 6-1.1-41 or Indiana Code § 36-9-14.5.